**Ronnie C. WOLFENBERGER and Julie Wolfenberger, Appellants,**

**v.**

**HOUSTON LIGHTING AND POWER COMPANY and Greater Houston Pipe, L.C., Appellees.**

**No. 01–01–00528–CV.**

Court of Appeals of Texas, Houston (1st Dist.).

March 21, 2002.

Rehearing Overruled May 2, 2002.

---

Trent Delno Stephens, Houston, for appellants.

Kevin P. Riley, Jonathon Bruce Smith, John V. Anaipakos, Keith S. Donati, Houston, for appellees.

Panel consists of Justices COHEN, WILSON, and NUCHIA.

## OPINION

MURRY B. COHEN, Justice.

Ronnie Wolfenberger and Julie Wolfenberger (together, "the Wolfenbergers") sued appellees, Houston Lighting & Power Company ("HL & P") and Greater Houston Pipe, L.C. ("GHP"), alleging negligence, trespass, and gross negligence in connection with an injury that Ronnie sustained from a power line. The Wolfenbergers also alleged that HL & P was liable for negligence per se and nuisance. Julie Wolfenberger, Ronnie's wife, sought relief for loss of consortium. Both HL & P and GHP moved for summary judgment. The trial judge granted both parties' motions and rendered a take-nothing judgment for appellees. We affirm the judgment in part, reverse it in part, and remand the cause.

## Facts

On February 24, 1998, Ronnie, an employee of Wolfenberger Enterprises, Inc., was repairing leaks on the roof of a building occupied by his employer. He was injured when shocked by electricity from a 7200–volt power line that ran about three feet above the building. The building had been purchased from GHP on January 14, 1998 by Woodie Wolfenberger, Ronnie's father. Woodie Wolfenberger was the controlling shareholder, director, and president of Wolfenberger Enterprises, Inc.

Ronnie saw the line before he began his work and made a mental note to avoid it. He considered the line to be open and obvious. Nevertheless, neither Ronnie nor anybody else notified HL & P, the line's owner, that work would be done near the line.

HL & P moved for a rule 166a(c) summary judgment, claiming that under sections 752.003, 752.004, 752.008 of the Texas Health and Safety Code, Ronnie was a "person responsible" for the roof work and that, under those statutes, he should have to indemnify HL & P for any liability it incurred due to his contact with the wire, including liability HL & P might incur as a result of Ronnie's own injuries. *See* Tex. Health & Safety Code Ann. §§ 752.003, 752.004, 752.008 (Vernon 1998). The trial judge granted HL & P's motion.

GHP moved for both a rule 166a(i) and a rule 166a(c) summary judgment, arguing that (1) regarding the negligence claims, GHP owed no duty to the plaintiffs and (2) regarding the trespass claim, the plaintiffs had no standing because they did not possess the land allegedly trespassed. The trial judge granted GHP's motion.

## ANALYSIS

### A. HL & P's Motion for Summary Judgment

In their first point of error, the Wolfenbergers claim that the trial judge erred by granting HL & P's motion.[1] We follow the usual standard of review for summary judgments under rule 166a(c), a standard favorable to plaintiffs. *See American Tobacco, Co., Inc. v. Grinnell*, 951 S.W.2d 420, 425 (Tex.1997). In determining whether there is a fact issue precluding summary judgment, we take all of the Wolfenbergers' evidence, and all reasonable inferences from it, as true, and we disregard all evidence and inferences to the contrary. *Id.* HL & P relied on the affirmative defense of statutory indemnity; thus, it had the burden to prove its entitle-

1. The Order Granting Summary Judgment provides:

 After reviewing the motion, all responses, and arguments of counsel, and in light of the recent case of *Chavez v. City of San Antonio*, 04–99–00350–CV, 3–20–00, the Court is of the opinion that the motion in all respects should be GRANTED.

ment to that defense conclusively, and it had to negate as a matter of law the existence of fact issues on the elements of that statutory affirmative defense.

HL & P's motion asserted that it should be indemnified by Ronnie for all liability because he was a "person responsible" for the roof work. *See* TEX. HEALTH & SAFETY CODE ANN. §§ 752.003, 752.004, 752.008. Section 752.003 requires a "person responsible" for work within six feet of a power line to notify the lines' owner before the work begins:

> (a) A *person,* firm, corporation, or association *responsible for* temporary *work* or a temporary activity or function *closer to a high voltage overhead line than the distances prescribed by this chapter must notify the operator* of the line at least 48 hours before the work begins.
>
> (b) *A person,* firm, corporation, or association *may not begin the work,* activity, or function under this section *until the person,* firm, corporation, or association *responsible for the work,* activity, or function and *the owner* or operator, or both, *of the high voltage overhead line have negotiated a satisfactory mutual arrangement* to provide temporary de-energization and grounding, temporary relocation or raising of the line, or temporary mechanical barriers to separate and prevent contact between the line and the material or equipment or the person performing the work, activity, or function.

TEX. HEALTH & SAFETY CODE ANN. § 752.003 (emphasis added). Section 752.004 prohibits work within six feet of a power line without compliance with section 752.003:

> (a) Unless a person, firm, corporation, or association effectively guards against danger by contact with the line as prescribed by Section 752.003, the person, firm, corporation, or association, either individually or through an agent or em-

ployee, may not perform a function or activity on land, a building, a highway, or other premises if at any time it is possible that the person performing the function or activity may:

> (1) move or be placed *within six feet of a high voltage overhead line* while performing the function or activity; or
>
> (2) bring any part of a tool, equipment, machine, or material *within six feet of a high voltage overhead line* while performing the function or activity.
>
> (b) A person, firm, corporation, or association may not require an employee to perform a function or activity prohibited by Subsection (a).

TEX. HEALTH & SAFETY CODE ANN. § 752.004 (emphasis added). Section 752.008 provides for indemnification of the lines' owner for a violation of chapter 752:

> If a violation of this chapter results in physical or electrical contact with a high voltage overhead line, the person, firm, corporation, or association that committed the violation is liable to the owner or operator of the line for all damages to the facilities and for all liability that the owner or operator incurs as a result of the contact.

TEX. HEALTH & SAFETY CODE ANN. § 752.008. A person who violates chapter 752 also commits a crime punishable by fine and confinement in jail. *See* TEX. HEALTH & SAFETY CODE ANN. § 752.007 (Vernon 1998).

 HL & P claims that under the decision in *Chavez v. City of San Antonio,* if a "person responsible" violates any of the above statutes, the doctrine of circular indemnity applies. 21 S.W.3d 435, 439–40 (Tex.App.-San Antonio 2000, pet. denied). That doctrine precludes a plaintiff who violates the above statutes from recovering against the power line's owner because, under section 752.008, the plaintiff would have to pay his own damages. *See id; see*

*also Phillips Co. v. McKown,* 580 S.W.2d 435, 443 (Tex.Civ.App.-Tyler 1979, writ ref'd n.r.e.). For that doctrine to apply here, HL & P had to prove conclusively, as a matter of law, that (1) Ronnie was a "person responsible" for the roof work and (2) that he or his equipment came within six feet of the line. If HL & P failed in either respect, it was not entitled to summary judgment on its affirmative defense of statutory indemnity.

HL & P relies on Ronnie's deposition and the affidavit of its expert. Ronnie testified:

Q: Now, at the time of your accident in February of '98 you were working within six feet of HL & P's power line, weren't you?

A: I'm not sure.

Q: Well, how far away from the power line were you?

A: I am not positive. I thought I was *at least six feet* away from the lines, the last I remember.

Q: Are you telling us [HL & P] that the electricity arced over six feet?

A: I do not know what happened.

. . .

Q: . . . is it your testimony here today that you never got closer than six feet of the power lines on the day you were injured?

A: That's the last I remember, yes.

Q: So, you are not saying that it is impossible that you were within six feet of the power lines. You are saying you have no recollection of it. Is that a fair statement?

A: Correct.

Q: Okay. Because at some point I take it you lost—well, you tell me. Did you lose consciousness at some point while your accident was occurring?

A: Yes.

Q: When you regained consciousness were you—where were you located? Were you still on the roof?

A: Yes.

Q: And do you have a sense of how far you were from the power lines at that point?

A: I'm guessing eight feet or so.

HL & P'S expert witness, Frank Denbrock, was an electrical engineer who visited the site, examined the electrical facilities there, and reviewed photographs, documents produced by the parties, and Ronnie's deposition. He opined that Ronnie or his equipment "must have physically been within six feet of the [line] . . . in order for electricity to conduct from the power line to his body, causing the accident in question." That was the total of his opinion and explanation for the accident.

Ronnie's affidavit opposing summary judgment directly controverted Denbrock's opinion testimony. Ronnie declared, "My last recollection is that I was more than six feet from the power lines."

Viewed in the light most favorable to the nonmovant, Ronnie, what are the reasonable inferences from this evidence? The first is that Ronnie was struck by electricity where he was found—eight feet ·from the overhead wires. Any other conclusion would require us to assume, without evidence and contrary to the standard of review, that a person of Ronnie's unstated height and weight would have been knocked more than two feet backward, rather than being pulled forward or dropped where he stood, by this quantity of electricity. Any other (or any lesser) effect would not place Ronnie within six feet when he was struck. Second, because Ronnie saw the line, made a mental note to avoid it, thought he was "at least" six feet

away,[2] and last remembered that he was "more than" six feet away, a reasonable juror could infer, or simply believe without having to infer anything, that Ronnie was more than six feet away. In that case, he would not have to indemnify HL & P, even if he were a "person responsible." We conclude that HL & P's evidence standing alone did not prove conclusively as a matter of law that Ronnie was within six feet of the power line, and in any event, Ronnie's evidence raised a fact issue. Therefore, we sustain issue one.

**B. GHP's Motions for Summary Judgment**

In their second point of error, the Wolfenbergers contend that the trial judge erred by granting GHP's rule 166a(i) and 166a(c) summary judgment motion.

**1. Negligence and Gross Negligence**

We follow the usual standard of review for summary judgments under rules 166a(i) and 166a(c). *See Grinnell*, 951 S.W.2d at 425 (rule 166a(c) summary judgment); *Macias v. Fiesta Mart, Inc.*, 988 S.W.2d 316, 317 (Tex.App.-Houston [1st Dist.] 1999, no pet.) (rule 166a(i) summary judgment).

█ On January 14, 1998, GHP sold Woodie Wolfenberger, Ronnie's father and the owner of Ronnie's employer, Wolfenberger Enterprises, Inc., the property on which Ronnie was injured. Ronnie was injured about six weeks later, on February 24, 1998. Ronnie asserts that GHP is liable for his injuries because it failed to disclose the existence of the power lines at the time of sale.

█ A seller of real property is generally not liable for post-conveyance injuries caused by dangerous conditions on the real property. *Hicks v. Humble Oil & Refining Co.*, 970 S.W.2d 90, 93 (Tex.App.-

Houston [14th Dist.] 1998, pet denied). However, there is an exception to the rule:

> when a dangerous condition exists at the time the vendor [GHP] transfers possession, the vendor [GHP] is not subject to liability for injuries caused to others while upon the premises after vendee [Woodie Wolfenberger] has taken possession, unless the vendor [GHP] does not disclose or actively conceals the existence of the condition. This exception does not apply when the vendee [Woodie Wolfenberger] discovers or should have discovered the dangerous condition and has a reasonable opportunity to take precautions, or when the vendee has actual notice of the condition.

*Id.*

Ronnie claims that GHP can be held liable because it did not disclose the existence of the power lines. We disagree. The power lines were clearly visible and ran two to three feet above the building. Furthermore, Ronnie testified he saw the power lines, he made a mental note to avoid them, and the power lines were open and obvious. Because Ronnie, Wolfenberger Enterprises' general manager, was aware of the dangerous condition that the power lines posed, that knowledge was imputed, under these facts, to Woodie Wolfenberger, GHP's vendee. *See First Fin. Dev. Corp. v. Hughston*, 797 S.W.2d 286, 292 n. 2 (Tex.App.-Corpus Christi 1990, writ denied) (stating the general rule that, "information acquired by an agent is imputed to the principal," and citing for that proposition, *La Sara Grain v. First Nat'l Bank of Mercedes*, 673 S.W.2d 558, 563 (Tex.1984)). The knowledge of the wires imputed to Woodie Wolfenberger negated any duty that GHP may have owed to Ronnie. *See Hicks*, 970 S.W.2d at 93.

---

**2.** "At least" six feet is consistent with his being found eight feet away.

The same evidence defeats the Wolfenbergers' gross negligence claim.

### 2. Trespass

A court of appeals may not reverse a judgment in the absence of properly assigned error. *See Pat Baker Co., Inc. v. Wilson,* 971 S.W.2d 447, 449–50 (Tex.1998). The Wolfenbergers do not challenge on appeal the summary judgment rendered on their trespass claim. Thus, we affirm the summary judgment for GHP rendered on the Wolfenbergers' trespass claim. *See Garcia v. Nat'l Eligibility Express, Inc.,* 4 S.W.3d 887, 889 (Tex.App.-Houston [1st Dist] 1999, no pet.).

We overrule the Wolfenbergers' second point of error.

We affirm that portion of the judgment disposing of the Wolfenbergers' claims against GHP. We reverse that portion of the judgment disposing of the Wolfenbergers' claims against HL & P. That cause is remanded.

