Daniel TRAIL and Tracy
Trail, Appellants,

v.

Ewald FRIEDRICH and the City
of Weimar, Appellees.

City of Weimar, Appellant,

v.

Ewald Friedrich, Appellee.

No. 01–01–00741–CV.

Court of Appeals of Texas,
Houston (1st Dist.).

May 30, 2002.

Thomas Gerald Morrissey, Law Offices
of Gary Green, Inc., Austin, Todd Griffin,
Little Rock, for Appellant.

Ramon G. Viada, Abrams, Scott & Bickley, L.L.P., James A. Newsom, Munisteri,
Sprott, Rigby, Newsom & Vincent, P.C.,
Stefanie Orr, Houston, for Appellee.

Panel consists of Justices COHEN, NUCHIA, and SMITH.*

## OPINION

SAM NUCHIA, Justice.

This is an appeal of two summary judgments ordering that appellants, Daniel Trail and Tracy Trail, take nothing from defendants Ewald Friedrich and the City of Weimar. We affirm.

## BACKGROUND

Daniel Trail, a resident of Pine Bluff, Arkansas, was an independent painting contractor who performed most of his work in central and south Texas. Approximately 75% of his work involved painting metal buildings. On December 2, 1998, Trail visited Friedrich at Friedrich's property outside the City of Weimar to see how Trail's previous paint jobs were holding up and to see if Friedrich needed any other painting done. Friedrich told Trail that he did not need any additional painting at that location, but that the metal roof on his business in town, the Corner Feed Store, needed painting. Friedrich asked Trail to go into town to look at the roof and to return with an estimate for the job.

Trail went to the Corner Feed Store and walked around the building to determine the size and condition of the roof. He returned to Friedrich's other property and negotiated a price for the painting. He also told Friedrich that he needed to paint the roof after business hours so the overspray would not damage any vehicles. Friedrich telephoned an employee at the store and instructed him to close the store early that day.

Trail went to the store and, using a ladder, climbed on the roof. First, he blew some leaves off of the roof and

trimmed some overhanging tree limbs. While he was doing this, a man came out of the store, locked the door, and moved a pickup truck away from the building. He came over to the building and said "Hi" to Trail. Trail asked him if it was all right to drop the leaves and limbs down by the building, and the man said "Fine" and left. Trail began painting the roof with a metal spray gun that had a four-foot aluminum wand. After a portion of the roof was painted, the wand came into contact with an overhead high-voltage wire, and Trail received a severe electrical shock.

In his deposition, Trail testified that, when he went to the store to make his estimate, and later, when he went to the store at about 4:00 p.m. to do the painting, it was broad daylight, but he did not see the electrical poles or the wires between the poles. He further testified that he did not notice the wiring at any time before his wand made contact with the wire. He testified that he was an independent contractor, he was paid by the job and not by the hour, he supplied all his own tools, equipment, and supplies, and Friedrich did not tell him how to do the work. He said that he was in charge of the work and was the person responsible for the work. Trail looked at photographs taken by his uncle about one month after the accident and admitted that the utility poles and electrical lines were readily apparent. Trail testified that he did not notify the City, the owner and operator of the power line, that he would be working near the electrical lines and, to his knowledge, no one did.

Trail sued Friedrich for negligence in failing to (1) warn him of the electrical lines, (2) maintain the lines properly, (3) provide a safe work place, (4) inspect the premises and discover the dangerous con-

* The Honorable Jackson B. Smith, Jr., retired Justice, Court of Appeals, First District of Texas at Houston, participating by assignment.

dition, and (5) correct the dangerous condition. Trail also alleged that Friedrich was negligent in failing to comply with section 752.003 of the Texas Civil Practices and Remedies Code, which requires a person, firm, corporation, or association responsible for temporary work closer than six feet from an overhead high voltage line to notify the operator of the line at least 48 hours before the work begins and to make arrangements for the de-energization of the line or for a mechanical barrier to prevent contact between the line and the equipment or worker. *See* TEX. HEALTH & SAFETY CODE ANN. §§ 752.003, 752.004 (Vernon 1992).

Trail sued the City for negligence in (1) allowing the current to flow through the power line, (2) failing to place a protective device on the power line, (3) failing to warn Trail that current flowed through the power line, (4) installing or maintaining the line too close to the store, and (5) failing to properly maintain and inspect the line.

Tracy Trail alleged a cause of action for loss of consortium against both defendants.[1]

## DISCUSSION

■ In two points of error, the Trails contend the trial court erred in granting the two motions for summary judgment. We follow the usual standard of review for a summary judgment rendered pursuant to rule 166a(c) of the Texas Rules of Civil Procedure. *See Randall's Food Mkts., Inc. v. Johnson,* 891 S.W.2d 640, 644 (Tex. 1995); *Lear Siegler, Inc. v. Perez,* 819 S.W.2d 470, 471 (Tex.1991); *Lawson v. B Four Corp.,* 888 S.W.2d 31, 34 (Tex.App.-Houston [1st Dist.] 1994, writ denied); *Marchal v. Webb,* 859 S.W.2d 408, 412 (Tex.App.-Houston [1st Dist.] 1993, writ denied). Because the judgment does not specify the ground relied on, we will affirm the summary judgment if any theory advanced in the motion for summary judgment is meritorious. *See State Farm Fire & Cas. Co. v. S.S.,* 858 S.W.2d 374, 380 (Tex.1993).

### *Friedrich's Summary Judgment*

In his first issue, Trail contends the trial court erred in granting Friedrich's motion for summary judgment because chapter 95 of the Texas Civil Practice and Remedies Code does not apply to claims based on chapter 752 of the Texas Health and Safety Code and there was an issue of fact regarding who was the person responsible for the work under chapter 752.

In his motion for summary judgment, Friedrich asserted that chapter 95 of the Texas Civil Practices and Remedies Code is an affirmative defense to property owners against independent contractors. Section 95.003 provides:

A property owner is not liable for personal injury, death, or property damage to a contractor, subcontractor, or an employee of a contractor or subcontractor who constructs, repairs, renovates, or modifies an improvement to real property, including personal injury, death, or property damage arising from the failure to provide a safe workplace unless:

(1) the property owner exercises or retains some control over the manner in which the work is performed, other than the right to order the work to start or stop or to inspect progress or receive reports; and

(2) the property owner had actual knowledge of the danger or condition resulting in the personal injury, death,

---

**1.** Appellants concede that Tracy Trail's cause of action is derivative of Daniel Trail's claims and that she cannot recover unless he recovers damages.

or property damage and failed to adequately warn.

TEX. CIV. PRAC. & REM.CODE ANN. § 95.003 (Vernon 1997).

Friedrich also asserted that, under chapter 752 of the Texas Health and Safety Code, Trail had a duty, as the person responsible for the work near the high voltage electrical line, to notify the City and make arrangements to have the power line de-energized. Section 752.003 provides:

> (a) A person, firm, corporation, or association responsible for temporary work or a temporary activity or function closer to a high voltage overhead line than the distances prescribed by this chapter must notify the operator of the line at least 48 hours before the work begins.

> (b) A person, firm, corporation, or association may not begin the work, activity, or function under this section until the person, firm, corporation, or association responsible for the work, activity, or function and the owner or operator, or both, of the high voltage overhead line have negotiated a satisfactory mutual arrangement to provide temporary de-energization and grounding, temporary relocation or raising of the line, or temporary mechanical barriers to separate and prevent contact between the line and the material or equipment or the person performing the work, activity, or function.

> (c) The person, firm, corporation, or association responsible for the work, activity, or function shall pay the operator of the high voltage overhead line the actual expense incurred by the operator in providing the clearance prescribed in the agreement. The operator may require payment in advance and is not required to provide the clearance until the person, firm, corporation, or associa-

tion responsible for the work, activity, or function makes the payment.

TEXAS HEALTH & SAFETY CODE ANN. § 752.003(a)-(c) (Vernon 1992).

## A. Application of Chapter 95

■ Trail contends that chapter 95 of the Civil Practices and Remedies Code does not apply to claims based on chapter 752 of the Health and Safety Code because chapter 95 applies only to liability of a property owner for failing to provide a safe work place. He argues that, if Friedrich is a person responsible for the temporary work under chapter 752, there would be a conflict between chapter 95 and chapter 752 and that the provisions of chapter 752, as the more specific statute, would prevail.

In his petition, Trail alleged common law negligence for failure to provide a safe work place. These allegations are squarely within the ambit of chapter 95. The record establishes that Trail was an independent contractor and that Friedrich did not retain any control over Trail's work other than to authorize the work to start. Therefore, Friedrich was not liable for any injuries to Trail under a common law negligence cause of action, and these allegations were properly disposed of by the summary judgment in favor of Friedrich.

## B. Application of Chapter 752

Although Trail testified clearly and unequivocally that he was in charge of the painting and was the person responsible for the work, he contends that there is a fact issue regarding who is the person responsible as contemplated by chapter 752. Trail relies on *Hullum v. Skyhook Corp.*, 753 F.2d 1334 (5th Cir.1985), and *McCaughtry v. Barwood Homes Ass'n*, 981 S.W.2d 325 (Tex.App.—Houston [14th Dist.] 1998, pet. denied).

Trail's reliance on *Hullum* is misplaced. In *Hullum*, Exxon contracted with a sign

company to erect an Exxon sign at an independently-owned service station that sold Exxon products. Except for its agreement to furnish an Exxon sign, Exxon had no connection with the service station. The district court addressed, as a case of first impression, the interpretation of the phrase, in the predecessor statute to chapter 752,[2] "person ... responsible for the work to be done." *Hullum,* 753 F.2d at 1337. On appeal, the Fifth Circuit Court of Appeals explained, "Applying accepted rules of statutory construction, the district court, however, concluded that the language and policy of article 1436c required that liability under the statute be linked to 'some degree of control *over the work site.'*" *Id.* (citation omitted) (emphasis added). The court of appeals then also discussed liability with an emphasis on control over the work site. The court of appeals analyzed the introductory phrase of the relevant section, " 'When any person ... *desires to temporarily carry on* any ... work ... in closer proximity to any high voltage overhead line than permitted by this Act, the person or persons responsible for the work to be done shall ....' " and concluded that the phrase "focuses on those parties who desire to temporarily carry on the work and who therefore exercise some degree of control over the work site." *Id.* The court of appeals further concluded that, because Exxon did not exercise control over the work site and had little involvement with the installation of the sign, Exxon was not a "person responsible" under the statute. *Id.* at 1338.

In their application of the law to the facts in *Hullum,* the district court introduced, and the court of appeals affirmed, a concept not contained in the plain language of the statute—the work *site.* The

statute, as worded in former article 1436c and in section 752.003, places the duty to notify the operator of the high voltage line on the "person ... responsible for temporary work" close to the line. Although the person responsible for the work may also exercise some control over the work *site,* another person, such as the owner of the premises, may have some control over the work *site* and yet have nothing whatever to do with the work except to authorize it and pay the contractor. We conclude that *Hullum* is limited to its facts.

Likewise, Trail's reliance on *McCaughtry* is misplaced. In *McCaughtry,* Barwood, the owner and operator of a clubhouse, swimming pool, and tennis court, contracted with C.L. Sports to refurbish the tennis court and paint the light standards surrounding the court. *McCaughtry,* 981 S.W.2d at 327. McCaughtry, an employee of C.L. Sports, was injured when his aluminum, extended-handle paint roller came in contact with a high voltage wire near one light standard. *Id.* at 327–28. The *McCaughtry* court distinguished *Hullum* on its facts because Barwood owned the property and controlled the common areas, including the tennis court, and had representatives at the work site observing the work being performed. *Id.* at 335. The court of appeals enumerated four factors from the *Hullum* analysis showing Exxon's lack of involvement and concluded that Barwood's involvement went further than Exxon and that there was a fact issue regarding whether Barwood was a responsible party under chapter 752. *Id.*

 In the present case, Friedrich was not at the store during Trail's initial inspection of the roof or at any time Trail was working. Friedrich's employee left the premises as Trail prepared to do his

---

**2.** Tex. Civ. Stat. Ann. art. 1436c, *repealed by* Act of May 18, 1989, 71st Leg., R.S. ch. 678 § 16,

1989 Tex. Gen. Laws 2230, 3165.

work. Unlike *McCaughtry*, the employee did not observe Trail's work or attempt to direct the work. There is no evidence in the record to create a fact issue regarding whether Friedrich was responsible for the work to be performed by Trail.

The El Paso Court of Appeals considered the issue of the "person responsible" under chapter 752 in the context of an independent contractor in *Espinoza v. Hicks*, 984 S.W.2d 274 (Tex.App.-El Paso 1998, no pet.). In *Espinoza*, E.B. Hicks, owner of a cotton farm, hired Royce Farms to harvest his cotton. *Id.* at 275–76. Hicks did not retain any right to direct the details of the work of the contractor. *Id.* at 276. Espinoza, an employee of Royce Farms, was severely burned when he touched a piece of equipment that had come in contact with a high voltage line that crossed Hicks's land. *Id.* In affirming a summary judgment in favor of Hicks, the court of appeals reasoned, "The person responsible for the work, and presumably most knowledgeable about the need to notify the utility, is still required to do so." *Id.* at 277. The court applied the common-law rule that "one who hires an independent contractor does not have a duty to insure that the contractor performs the hired work in a safe manner." *Id.* (citing *Abalos v. Oil Dev. Co. of Tex.*, 544 S.W.2d 627, 631 (Tex.1976)).[3]

In the present case, as in *Espinoza*, the premises owner, Friedrich, contracted with an independent contractor, Trail, to have work performed on the premises. Like Hicks, Friedrich did not retain any right to direct the details of the work of the contractor. In addition, Trail went to the job site to inspect the premises before agreeing to do the work. Trail supplied all his own equipment and materials, and the evidence reveals that Friedrich was never at the job site during the time Trail was working. Furthermore, Trail testified that he was the person in charge of and responsible for the work.

We hold that, under these facts, Trail was the person responsible for the work as contemplated in chapter 752. Accordingly, we overrule Trail's first issue.

### The City's Summary Judgment

■ In his second issue, Trail contends that the trial court erred in granting the City's motion for summary judgment because there is an issue of fact regarding who was the person responsible for the work near the high voltage line and the City ordinance requiring pre-suit notice violates the open courts provision of the Texas Constitution.

In its motion for summary judgment, the City contended that, because Trail was the person responsible for the work near the high voltage line and failed to give the City the required notice, Trail could not recover from the City because, under the statute, he is obligated to indemnify the City for all damages and liability incurred by the City as a result of contact with the line. *See* TEX. HEALTH & SAFETY CODE ANN. § 752.008 (Vernon 1992).

We have determined under Trail's first issue that Trail was the person responsible

---

3. Trail complains that *Espinoza* does not conduct its analysis using the *Hullum* factors. We note that, while the *Hullum* analysis can be broken down into seven "factors," the *Hullum* court did not purport to announce a seven-factor test to determine the responsible person under the statute. Furthermore, the *McCaughtry* court looked at only four of *Hullum's* factors, and the San Antonio Court of Appeals, in determining that the worker himself, a volunteer, was the person responsible, discussed five "*Hullum* factors." *See Chavez v. City of San Antonio*, 21 S.W.3d 435, 439 (Tex.App.-San Antonio 2000, pet. denied). We conclude that *Hullum* did not set forth factors that must be considered in the determination of the person responsible under chapter 752.

for the work as contemplated under chapter 752. It is uncontested that Trail did not notify the City as required by the statute. Thus, Trail violated the provisions of chapter 752. The requirement of section 752.008 that Trail indemnify the City precludes his recovery of damages from the City. *See Chavez*, 21 S.W.3d at 440. Accordingly, we overrule Trail's second issue.

Because we may affirm the summary judgment in favor of the city on the basis of Trail's duty to indemnify the City, we need not consider whether the City ordinance requiring notice of a claim violates the Texas Constitution.

We affirm the judgment.

### *The City of Weimar's Appeal*

The City has filed a "conditional appeal" from the summary judgment in favor of Friedrich. We note that the summary judgment in favor of Friedrich is not adverse to the City and there is no other judgment or order adverse to the City. Therefore, the City has nothing to appeal. Accordingly, the City's appeal is dismissed.