**Affirmed and Memorandum Opinion filed October 29, 2019.**



In The

# Fourteenth Court of Appeals

_____

## NO. 14-18-00663-CV

_____

**ROY JORDAN, JR., Appellant**

**V.**

**CENTERPOINT ENERGY HOUSTON ELECTRIC, LLC, Appellee**

**On Appeal from the 190th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2015-53281**

## M E M O R A N D U M   O P I N I O N

Appellant Roy Jordan, Jr. sued CenterPoint Energy Houston Electric, LLC, alleging negligence for personal injuries he sustained from being electrocuted while trimming a tree located on his property. CenterPoint counterclaimed for indemnity under Texas Health and Safety Code Chapter 752, which prohibits a person from engaging in activities within a certain proximity of high voltage overhead power lines unless that person has given the operator prior notice and taken safety precautions. CenterPoint moved for summary judgment on its indemnity

counterclaim and Jordan's negligence claim. The trial court granted summary judgment in favor of CenterPoint and awarded CenterPoint attorney's fees, costs, and expenses.

On appeal, Jordan argues that the summary judgment is erroneous because it is based on improper summary-judgment evidence as well as an incorrect reading of Chapter 752, and because he raised material fact issues. Jordan also challenges the attorney fee award in CenterPoint's favor. We conclude that Jordan's issues lack merit and affirm the trial court's judgment.

## Background

Two crepe myrtle trees grow adjacent to Jordan's driveway and sit directly beneath overhead high voltage power lines, which CenterPoint owns and maintains. Jordan decided to trim the trees because certain lower-hanging limbs over his driveway scratched his truck. The highest limbs of one or both trees reached to within six feet of the overhead power lines. Jordan did not request CenterPoint to trim the trees, nor did he notify CenterPoint beforehand that he planned to trim them.

Jordan positioned himself in and at the "lower bottom" of one crepe myrtle, standing where the "tree starts to divide." Using bolt-cutters, Jordan successfully cut a few branches. He encountered difficulty cutting one particular limb, however, and set down the bolt-cutters to grab the limb with both hands. When he did, he felt a current through his body and received severe electrical burns to his hands, legs, and left foot.

Jordan sued CenterPoint for negligence, claiming that CenterPoint breached a duty to exercise ordinary care by failing to properly maintain the area around the power lines, which caused the tree to contact the power lines and become energized. CenterPoint answered with an affirmative defense and counterclaim for

2

indemnification under Texas Health and Safety Code Chapter 752, "High Voltage Overhead Lines." *See* Tex. Health & Safety Code §§ 752.001-.008. Among other things, Chapter 752 prohibits any person from performing an activity on land if it is possible that the person may bring any material within six feet of a high voltage overhead line while performing the activity. *See id*. § 752.004(a). Additionally, if a violation of Chapter 752 results in physical or electrical contact with a high voltage overhead line, the person committing the violation is responsible for any liability the owner or operator incurs as a result of the contact. *See id*. § 752.008.

CenterPoint moved for summary judgment on its Chapter 752 affirmative defense and indemnity counterclaim. CenterPoint attached relevant excerpts from Jordan's deposition, which established the factual circumstances surrounding the injury, including facts relevant to CenterPoint's Chapter 752 defense. CenterPoint established that: (1) Jordan alone was responsible for his tree-trimming work; (2) the overhead power lines were high voltage lines; (3) Jordan gave CenterPoint no advance notice that he would trim trees beneath the power lines; and (4) Jordan's activity involved at least the possibility of bringing material within six feet of the overhead line. CenterPoint's expert, F.M. Brooks, P.E., stated in an affidavit:

> Jordan stated that he was using the bolt cutters to cut the tree limbs. He stated further that on one of the limbs he could not get the bolt cutters through the limb so he grabbed the limb to break it. That is when he felt the current. Assuming that to be true, Jordan brought material, the tree limb, into direct or effective contact with the CenterPoint electrical distribution line.

> For electrical current to flow through a tree limb and for Jordan to feel the current and sustained [sic] electrical burn injuries, the tree limb must have been brought to within one inch of the electric line. This is a basic law of physics. Electricity does not "jump" several feet, or even one foot, across the air to a tree limb or any conductive material. So, Jordan made direct contact, or effective contact with the electric line while when he was handling the tree limb. Because of that, Jordan

3

necessarily must have brought a tree limb physically with six feet of the line in order for electricity to conduct from the power line to his body. Otherwise, it was not possible for the incident and the injuries he sustained as a result to have occurred.

The electrical distribution line that was involved in the accident in question is a 19,900 volt overhead primary power line, as measured between a conductor and the ground. The crest for this power line is 28,139 volts. The 'crest' is the maximum possible voltage that may be sustained by the power line.

At standard air density—a barometric pressure of 76 cm of mercury and temperature of 25 degrees Celsius—air has a dielectric strength of approximately 31 kilovolts per centimeter (31 kv/cm) In other words, a 31,000-volt source of electricity can conduct across air for approximately one centimeter. This physical law is documented in scientific treatises, manuals, and other books routinely relied upon by engineers to ensure the safe and proper performance of their work. The relevant passages from two of these books are attached hereto. . . .

Although changes in atmospheric factors such as temperature and relative humidity can alter the dielectric strength of air, any effect such factors might have is negligible.

Based on the maximum voltage sustainable by the overhead primary power line involved in this case—28,139 volts—the maximum distance electricity from the line could have conducted across air is approximately 0.94 centimeters, or 0.37 inches. Stated another way, in order for electricity from the power line in question to have arced a distance of six feet in the air, the maximum voltage of the lien would have to have been over 5,600,000 volts. Therefore I can state with absolute scientific certainty that it is physically impossible for electricity from the 19,900 volt power line involved in this case to have arced over six feet in the air to contact Jordan.

Jordan responded and moved to strike almost all of CenterPoint's summary-judgment evidence. He urged that CenterPoint failed to show that he brought himself or any material within six feet of a high voltage overhead line. Jordan asserted by affidavit that he did not come within six feet, nor did he cause any tree branch to come within six feet, of the overhead lines. He stated that CenterPoint's

4

contrary conclusion "is wrong because they were not there when it happened." Finally, he contended that Chapter 752 should not apply to the circumstances of his case because it would essentially provide a "blank check to a company that makes billions to never have to maintain any of their lines. . . ."

After a hearing, the trial court concluded that Jordan violated "multiple provisions of Chapter 752" and that his violations "resulted in electrical or physical contact with CenterPoint Energy's high voltage overhead power line." The court concluded that Jordan violated Chapter 752 as a matter of law. Consequently, Jordan owed indemnity to CenterPoint and was precluded from recovering on his negligence claim as a matter of law. The trial court signed an interlocutory order granting CenterPoint summary judgment on its counterclaim for section 752.008 indemnity and dismissing Jordan's negligence claim with prejudice. The court also overruled Jordan's objections to Brooks's affidavit and most of his other objections to CenterPoint's summary-judgment evidence.

CenterPoint subsequently filed a motion for attorney's fees and costs and for entry of final judgment, and the trial court signed a final judgment incorporating its earlier order on CenterPoint's summary-judgment motion and awarding CenterPoint $124,236.44 in attorney's fees, $30,813.25 in costs and expenses, and conditional appellate attorney's fees. After Jordan's motion for new trial was overruled by operation of law, this appeal timely followed.

## Objections to Summary-Judgment Evidence

As part of his first issue, Jordan argues that the trial court erred in overruling many of his objections to CenterPoint's summary-judgment evidence. We begin with this issue because it will determine the scope of summary-judgment evidence we may consider.

5

## A.     Standard of Review

The rules of evidence control the admissibility of evidence in summary-judgment proceedings, and we review a trial court's decision to admit or exclude summary-judgment evidence for abuse of discretion. *Seim v. Allstate Tex. Lloyds*, 551 S.W.3d 161, 163-64 (Tex. 2018). An abuse of discretion occurs when the trial court acts arbitrarily or without reference to any guiding rules and principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241-42 (Tex. 1985). We must uphold the trial court's evidentiary ruling if there is any legitimate basis for the ruling. *See Enbridge Pipelines (E. Tex.) L.P. v. Avinger Timber, LLC*, 386 S.W.3d 256, 264 (Tex. 2012) (quoting *Owens-Corning Fiberglas Corp. v. Malone*, 972 S.W.2d 35, 43 (Tex. 1998)). We will set aside the trial court's judgment only if the "erroneous evidentiary ruling probably caused the rendition of an improper judgment." *Horizon/CMS Healthcare Corp. v. Auld*, 34 S.W.3d 887, 906 (Tex. 2000); *see* Tex. R. App. P. 44.1(a)(1).

## B.     Expert Affidavit

Jordan first challenges the affidavit of F.M. Brooks, CenterPoint's expert. "A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." Tex. R. Evid. 702; *see Transcontinental Ins. Co. v. Crump*, 330 S.W.3d 211, 215 (Tex. 2010). Brooks opined that, based on Jordan's injuries and the laws of physics, "Jordan necessarily must have brought a tree limb physically with[in] six feet of the line in order for electricity to conduct from the power line to his body. Otherwise, it was not possible for the incident and the injuries he sustained as a result to have occurred." Brooks summarized various scientific principles and facts that led him to this conclusion.

6

Jordan argues Brooks's affidavit is not admissible because it:

- contains hearsay, although Jordan does not identify specifically any hearsay statements;

- assumes facts not in evidence, including that Jordan was approximately four feet off the ground, Jordan was using or had at his disposal several tools, the limbs of the tree Jordan was trimming were already within six feet of the power line, and the power lines at issue were high voltage lines;

- contains conclusory statements, such as that Jordan brought a tree limb into direct or effective contact with the power line or Jordan made direct or effective contact with the power line;

- fails to set out Brooks's methodology, technique, or foundational data upon which Brooks's opinions are based;

- does not show Brooks is qualified as an expert; and

- violates Texas Rule of Civil Procedure 166(a) because the statements contained in paragraphs 3, 6, 7, 8, 9, 10, 11, 12, and 16 are conclusory, not readily convertible, or are not credible.

Jordan asserted each of the above objections in the trial court, and the court overruled them by written order.[1]  Thus, Jordan preserved error in the trial court.[2]  *See, e.g.,*

---

[1] We reject CenterPoint's argument that Jordan waived his evidentiary objections to Brooks's affidavit by failing to obtain a ruling.  The trial court expressly overruled them in its summary judgment order.

[2] Jordan raises several additional objections to Brooks's affidavit on appeal.  However, he did not assert them in the trial court and thus has not preserved any challenges to Brooks's affidavit other than those we have identified.  *See* Tex. R. App. P. 33.1(a) (to preserve a complaint for appellate review, a party must, as is relevant here, make a timely objection in the trial court and

7

*Mansions in the Forest, L.P. v. Montgomery County*, 365 S.W.3d 314, 317 (Tex. 2012).

First, Jordan's complaints that Brooks's affidavit contains hearsay or assumes facts not in evidence, are unavailing. "An expert may base an opinion on facts or data in the case that the expert has been made aware of, reviewed, or personally observed. If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subjection, they need not be admissible for the opinion to be admitted." Tex. R. Evid. 703; *see In re Christus Spohn Hosp. Kleberg*, 222 S.W.3d 434, 440 (Tex. 2007) (orig. proceeding) (noting that expert witnesses may testify about facts or data not personally perceived, but "reviewed by, or made known to them"; experts may "rely on inadmissible hearsay, privileged communications and other information that the ordinary witness may not"; "an expert may state an opinion on mixed questions of law and fact").

Moreover, Brooks explained that his opinions are based on his review of the case evidence. For example, in recounting the sequence of events leading to Jordan's injury, Brooks relied not only on his own inspection of the accident site but also on Jordan's deposition testimony, which was attached to CenterPoint's summary-judgment motion. Brooks relied on CenterPoint's incident report to support his conclusion that the overhead lines operated at high voltage. In his affidavit, Brooks explained the bases for his opinions and properly attached several pertinent excerpts from electrical handbooks that described the physical laws supporting his opinions. *See, e.g.*, *Thompson v. Curtis*, 127 S.W.3d 446, 450 (Tex. App.—Dallas 2004, no pet.) (explaining that logical conclusions based on stated underlying facts are not conclusory and are proper in summary-judgment affidavits). Jordan offers no

___

obtain a ruling); *Seim*, 551 S.W.3d at 163-64 (explaining that the rules of error preservation apply to summary-judgment evidence).

8

argument or authority explaining why Brooks's reliance on the facts or data described undermines Brooks's expert opinions. *See In re Christus Spohn Hosp. Kleberg*, 222 S.W.3d at 440. We therefore reject Jordan's arguments that Brooks's testimony assumes facts not in evidence, is conclusory, or is not readily controvertible or not credible.[3]

Further, Brooks attached his curriculum vitae, which reflects his extensive qualifications, education, training, and experience as an electrical engineer. Jordan has not cited, either on appeal or in the trial court, any authority that an expert with Brooks's qualifications and experience is not qualified to opine about the issues in this case. *See Haven Chapel United Methodist Church v. Leebron*, 496 S.W.3d 893, 905 (Tex. App.—Houston [14th Dist.] 2016, no pet.) (holding that Church waived complaint about admission of evidence because it "failed to articulate a coherent argument supported by substantive analysis" to support its contention that evidence was incompetent).

Jordan has not established that the trial court abused its discretion in overruling his objections to Brooks's affidavit.

## C. Admission of Business Records

Jordan also complains that the trial court erroneously admitted various business records, including Exhibit D, CenterPoint's incident report; Exhibit M, Atascocita Volunteer Fire Department records; and Exhibit N, UT Physicians records. Each exhibit, however, was accompanied by affidavits pursuant to Texas Rule of Evidence 902(10). *See* Tex. R. Evid. 902 (governing admission of self-authenticating evidence, including business records). Jordan complains that the

---

[3] Additionally, the credibility of an expert witness's testimony goes to the weight of the evidence, not its admissibility. *See LMC Complete Automotive, Inc. v. Burke*, 229 S.W.3d 469, 479 (Tex. App.—Houston [1st Dist.] 2007, pet. denied).

records contain hearsay, but the rules specifically permit the introduction of such business records as an exception to the general prohibition against the admission of hearsay. *See* Tex. R. Evid. 803(6). He also complains that the records contain conclusory or speculative statements, but he has not directed us to any specific portions of the records that are conclusory or speculative. *See, e.g.*, *Carnegie Homes & Constr. LLC v. Turk*, No. 14-16-00260-CV, 2017 WL 3927290, at \*6, 8 (Tex. App.—Houston [14th Dist.] Sept. 7, 2017, no pet.) (mem. op.) (explaining that "global and non-specific objections" to summary-judgment evidence do not preserve error; "objections of this nature create no obligation on a court's part to go line-by-line attempting to separate the wheat from the chaff"). Thus, Jordan has not demonstrated that the trial court abused its discretion in overruling his objections to the business records.

We overrule the portion of Jordan's first issue challenging CenterPoint's summary-judgment evidence.

## Summary Judgment on CenterPoint's Indemnity Claim

Jordan attacks the merits on essentially two grounds: (1) CenterPoint did not establish a violation of Chapter 752; and (2) Jordan raised genuine and material fact issues.

### A. Standard of Review

We review de novo a trial court's decision to grant summary judgment. *Ferguson v. Bldg. Materials Corp. of Am.*, 295 S.W.3d 642, 644 (Tex. 2009) (per curiam). We consider the evidence in the light most favorable to the non-movant, indulging reasonable inferences and resolving doubts in the non-movant's favor. *Cantey Hanger, LLP v. Byrd*, 467 S.W.3d 477, 481 (Tex. 2015). We credit evidence favorable to the non-movant if reasonable fact finders could, and we disregard

10

contrary evidence unless reasonable fact finders could not. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009).

To prevail on a traditional motion for summary judgment, the movant has the burden to establish that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c); *Mann Frankfort Stein & Lipp Advisors*, 289 S.W.3d at 848. Additionally, when, as here, a defendant moves for summary judgment on an affirmative defense, it must prove each essential element of that defense. *See Fed. Deposit Ins. Corp. v. Lenk*, 361 S.W.3d 602, 609 (Tex. 2012); *see also Trail v. Friedrich*, 77 S.W.3d 508, 513-14 (Tex. App.—Houston [1st Dist.] 2002, pet. denied); *Chavez v. City of San Antonio ex rel. City Public Service Bd. of San Antonio*, 21 S.W.3d 435, 438 (Tex. App.—San Antonio 2000, pet. denied). Once the movant establishes its entitlement to summary judgment, the burden shifts to the non-movant to present a material fact issue precluding summary judgment. *Tex. Black Iron, Inc. v. Arawak Energy Int'l Ltd.*, 566 S.W.3d 801, 810 (Tex. App.—Houston [14th Dist.] 2018, pet. denied). "The evidence raises a genuine issue of fact if reasonable and fair-minded jurors could differ in their conclusions in light of all of the summary-judgment evidence." *Hilburn v. Storage Trust Props., LP*, —S.W.3d—, No. 14-18-00184-CV, 2019 WL 4432625, at *2 (Tex. App.—Houston [14th Dist.] Sept. 17, 2019, no pet. h.) (citing *Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 755 (Tex. 2007)).

## B.    Public Safety and High Voltage Overhead Lines

The legislature passed Texas Health and Safety Code Chapter 752 to ensure the safety of persons engaged in activities near high voltage power lines. *See* Tex. Health & Safety Code §§ 752.001-.008; *see also McCaughtry v. Barwood Homes Ass'n*, 981 S.W.2d 325, 334 (Tex. App.—Houston [14th Dist.] 1998, pet. denied); *Martinez v. Gulf States Util. Co.*, 86 S.W.2d 802, 804 (Tex. App.—Houston [14th

11

Dist.] 1993, writ denied). Section 752.003 burdens persons responsible for temporary work or activities within certain prescribed proximities to high voltage overhead lines to notify the operator at least forty-eight hours before any work begins and to arrange for de-energization of the lines or other safety precautions. *See id.* § 752.003(a)-(b). Additionally, section 752.004 restricts activities near high voltage lines unless a person first complies with section 752.003:

> Unless a person, firm, corporation, or association effectively guards against danger by contact with the line as prescribed by Section 752.003, the person, firm, corporation, or association, either individually or through an agent or employee, may not perform a function or activity on land, a building, a highway, or other premises if at any time it is possible that the person performing the function or activity may:
>
> (1) move or be placed within six feet of a high voltage overhead line while performing the function or activity; or
>
> (2) bring any part of a tool, equipment, machine, or material within six feet of a high voltage overhead line while performing the function or activity.

Tex. Health & Safety Code § 752.004.

When a person fails to comply with Chapter 752 and physical or electrical contact with high voltage overhead lines results, the person who committed the violation is liable "for all liability that the owner or operator incurs as a result of the contact."[4] *See id.* § 752.008; *see also Trail v. Friedrich*, 77 S.W.3d 508, 513-14 (Tex. App.—Houston [1st Dist.] 2002, pet. denied) (plaintiff who violates Chapter 752 cannot recover damages from line owner because, under section 752.008, plaintiff must indemnify line owner for his own damages); *Chavez*, 21 S.W.3d at 439-40 (same). "[T]he purpose of the indemnification provision of Chapter 752 is

---

[4] Violations of this chapter also subject persons to fines of between $100 and $1,000, confinement in jail for not more than one year, or both. *See id.* § 752.007.

to place the liability for losses resulting from noncompliance with the notification and safety provisions on the 'person . . . responsible' for having workers near the line." *Martinez*, 864 S.W.3d at 805.

## C.      **CenterPoint Established Its Entitlement to Indemnity**

CenterPoint established that the overhead lines directly above Jordan's crepe myrtles were high voltage lines. "High voltage" means more than 600 volts measured between conductors or between a conductor and the ground. Tex. Health & Safety Code § 752.001(1). CenterPoint presented evidence that the lines at issue here carried 34.5 kilovolts—or 34,500 volts—if measured between conductors and 19.9 kilovolts—or 19,900 volts—if measured between the conductor and the ground. Because the lines at issue are high voltage lines, Chapter 752 applies. *See id.*

Second, Jordan is a person "responsible for temporary work" near the high voltage overhead lines. *See id.* § 752.003. A "person responsible" under this provision is a person who has some degree of control over the details of the work being performed. *See Trail*, 77 S.W.3d at 513; *Chavez*, 21 S.W.3d at 439. Jordan testified in his deposition that he alone controlled the work that he was doing, and he does not dispute on appeal that he is a person responsible under section 752.003.

Third, CenterPoint demonstrated that Jordan's tree-trimming work involved activity for which "it *is possible* that the person performing the function or activity . . . may bring any . . . material within six feet of a high voltage overhead line." *See* Tex. Health & Safety Code § 752.004(a) (emphasis added). Jordan concedes on appeal that the evidence established that the tree's branches were already within six feet of the high voltage overhead lines when he undertook his tree-trimming activities; thus, his work on the tree undisputedly involved activity that created the possibility that he would bring tools, equipment, machines, or materials within six feet of the high voltage lines. *See Chavez*, 21 S.W.3d at 439-40. In fact, Brooks

13

established that it would be physically impossible for electricity to have arced through the air to contact Jordan, and that Jordan necessarily brought material, the tree limb, into at least within one inch of the lines, which is direct or effective contact. CenterPoint thus established that Jordan violated section 752.004.

Finally, it is undisputed that Jordan did not notify CenterPoint that he was undertaking tree-trimming work near the high voltage lines, nor did he negotiate de-energization of the line or other measures to guard against the danger of contact with the line. *See* Tex. Health & Safety Code § 752.003(a)-(b). Thus, CenterPoint demonstrated that Jordan violated section 752.003.

Because Jordan violated Chapter 752, he is liable to CenterPoint for all liability CenterPoint incurred as a result of the physical or electric contact with the high voltage line. *See id.* § 752.008. CenterPoint, as the summary-judgment movant, established its entitlement to summary judgment on its Chapter 752 indemnity claim. *See, e.g.*, *Trail*, 77 S.W.3d at 513-14; *Chavez*, 21 S.W.3d at 437, 440. Thus, the burden shifted to Jordan to raise a genuine issue of material fact issue precluding summary judgment in CenterPoint's favor. *See Chavez*, 21 S.W.3d at 438.

**D.     Jordan Failed to Raise a Genuine and Material Fact Issue**

Jordan asserts that several fact issues preclude summary judgment. First, he contends he did not bring a tree limb within six feet of the power line because it is undisputed that the limbs of the tree were already within six feet of the power lines. The San Antonio Court of Appeals has rejected this argument, and so do we. *Chavez*, 21 S.W.3d at 439-40 ("It would be absurd to hold Chavez did not violate § 752.004 by performing work on a tree limb that was already within six feet of a power line, but find a violation occurs when a person whose work on a tree limb farther than six feet from a power line brings the limb within six feet of the line.").

14

Next, Jordan urges that there was no evidence of how he contacted the line or which tree limb he touched, and that he did not "come within 6 feet of the power lines above that tree with [his body], any tool, any machinery, or any material." However, neither contention creates a genuine issue of material fact in light of CenterPoint's expert proof that Jordan violated Chapter 752. Jordan's contentions do not preclude summary judgment on CenterPoint's indemnity claim. *See, e.g.*, *Presley v. Gulf States Utils. Co.*, No. 09-10-00039-CV, 2010 WL 4264097, at \*3 (Tex. App.—Beaumont Oct. 28, 2010, pet. denied) (mem. op.) ("Texas courts have held that summary judgment precluding recovery against an owner or operator of a power line is proper against a person who violates Chapter 752 and is liable to the owner or operator pursuant to the indemnity provision in section 752.008."). Jordan offered no expert evidence controverting Brooks's explanation and opinions. Thus, CenterPoint conclusively established that, under section 752.008, Jordan must indemnify CenterPoint for all liability that CenterPoint incurs as a result of the contact. *See* Tex. Health & Safety Code § 752.008; *Trail*, 77 S.W.3d at 513-14; *Chavez*, 21 S.W.3d at 440. Reasonable and fair-minded jurors simply could not differ on this conclusion.

Jordan relies on *Wolfenberger v. Houston Lighting and Power Co.*, 73 S.W.3d 444, 448-49 (Tex. App.—Houston [1st Dist.] 2002, pet. denied), to support his argument. There, however, Wolfenberger was not engaged in tree-trimming activities on a tree that was already within six feet of an overhead line; he was repairing roof leaks. *See id.* at 446. Although the powerline ran "about three feet above the building," there was no evidence of the location of the roof leaks, and Wolfenberger testified that he stayed at least six feet away from the power lines. *Id.* at 448-49. HL&P's expert witness stated, with no explanation, that Wolfenberger or his equipment "must have been within six feet of the [line] . . . in order for

electricity to conduct from the power line to his body, causing the accident in question." *Id*. at 448. Thus, the court concluded that HL&P did not meet its summary judgment burden. Although Jordan similarly stated that he did not bring himself or anything else within six feet of the power lines, there is no dispute that the tree that Jordan was trimming was already within six feet of the overhead line when he climbed into it. This fact, as well as the detailed expert affidavit provided in this case, discussed above, distinguish *Wolfenberger* from the present circumstances.

We conclude that Jordan failed to raise a genuine issue of material fact sufficient to defeat summary judgment. We overrule Jordan's issue challenging the summary judgment in CenterPoint's Favor.

## Attorney's Fees, Costs, and Expenses

Finally, Jordan challenges the trial court's award of attorney's fees, costs, and expenses to CenterPoint in the final judgment. He contends the trial court erred in awarding fees, costs, and expenses because: (1) CenterPoint did not seek attorney's fees, costs, or expenses in its summary-judgment motion; (2) there exists no legal basis to support the award; and (3) he is entitled to a trial or evidentiary hearing on the issue.

## A.    CenterPoint Pleaded for Attorney's Fees, Costs, and Expenses

First, CenterPoint's request for attorney's fees, costs, and expenses is supported by pleading and motion. CenterPoint specifically asserted in its answer and counterclaim that it was entitled to attorney's fees, costs, and expenses under Chapter 752: "Plaintiff owes complete indemnity to CenterPoint Energy for any and all damages recovered against CenterPoint Energy in this lawsuit, for the costs of any settlement, if any, and *for the costs and attorneys' fees and expenses incurred*

16

*by CenterPoint Energy in defense of this suit*." (Emphasis added). Additionally, CenterPoint sought full indemnity in the summary-judgment motion, and the trial court's order granting summary judgment in CenterPoint's favor adjudicated CenterPoint's entitlement to fees, costs, and expenses because it clearly stated that Jordan owes complete indemnity to CenterPoint Energy "for the costs and attorneys' fees and expenses incurred by CenterPoint Energy in defense of this suit." The order did not, however, state the amount awarded but left the issue for future determination. Thus, the summary-judgment order was interlocutory. *See, e.g.*, *Jimenez v. Lewis*, No. 14-17-00347-CV, 2019 WL 546426, at *4 (Tex. App.— Houston [14th Dist.] Feb. 12, 2019, no pet.) (mem. op.) (citing *Lehmann v. Har-Con Corp.*, 39 S.W.3d 191, 195 (Tex. 2001), and explaining that to be final, "a judgment must state clearly and unequivocally that it disposes of all claims and parties, or it must dispose of every pending claim and party regardless of its language"); *Zurich Am. Ins. Co. v. Debose*, No. 01-08-00717-CV, 2009 WL 793851, at *2 (Tex. App.— Houston [1st Dist.] Mar. 2, 2009, pet. denied) (mem. op.) (explaining that summary-judgment order that did not (1) unequivocally state that it finally disposes of all claims and all parties and (2) otherwise dispose of appellee's counterclaim for attorney's fees was not final despite appellee's motion for "final summary judgment"). Because the order granting summary judgment was not final and a claim for fees, costs, and expenses remained pending, the trial court retained plenary power to consider CenterPoint's motion for attorney's fees. *See Lacy v. Castillo*, — S.W.3d—, No. 14-17-00766-CV, 2019 WL 3368083, at *2-3 (Tex. App.—Houston [14th Dist.] July 25, 2019, no pet.).

## B.    Chapter 752's Indemnification Provision Supports the Award

Jordan additionally contends that Chapter 752 does not support an award of attorney's fees and costs because it does not contain a provision explicitly stating

that a power line operator may recover attorney's fees, costs, and expenses. However, section 752.008 states that if a violation of Chapter 752 results in physical or electrical contact with a high voltage overhead line, the person who committed the violation is liable for "all liability that the owner or operator incurs as a result of the contact." That section sounds in indemnity and requires the responsible party to indemnify the operator of high voltage overhead lines for all damages the operator incurs as a result of the chapter's violation. *See Chavez*, 21 S.W.3d at 438-39. The violator's indemnity obligation necessarily extends to attorney's fees, costs, and expenses the operator incurs in defending a lawsuit brought by the violator. *See Olson v. Central Power & Light Co.*, 803 S.W.2d 808, 814 (Tex. App.—Corpus Christi 1991, writ denied); *see also Whiteco Metrocom, Inc. v. Texas Utils. Elec. Co.*, 30 S.W.3d 421, 423 (Tex. App.—Dallas 2000, pet. denied) (utility's right to indemnity under Chapter 752 included attorneys' fees). The purpose of indemnity is to make a party whole, and if the indemnitee must bear the expense of defending a suit brought by a person who violated Chapter 752, then he is not made whole. *Olson*, 803 S.W.2d at 814. Jordan has not cited, nor have we found, any contrary authority.

## C.      Jordan Failed to Raise a Fact Issue in Response to CenterPoint's Motion

Finally, Jordan contends that "the court should have required the parties to proceed to a trial on the issue of reasonable and necessary attorney fees so that proper evidence could be presented, and cross examination could be conducted as due process would require." Jordan does not challenge the sufficiency of the evidence supporting the awards, but only his opportunity for an evidentiary hearing or trial.

In its motion for summary judgment, CenterPoint asked the court to grant judgment on its claim for full indemnity from Jordan, including all damages CenterPoint incurred. CenterPoint offered no evidence on attorney's fees, costs, or

expenses at that time. The order granting CenterPoint's motion stated that Jordan owes complete indemnity to CenterPoint for all its damages, including "the costs and attorneys' fees and expenses incurred by CenterPoint in defense of this suit." The order, however, did not determine the amounts incurred. CenterPoint then filed a motion for attorney's fees, costs, and expenses, supported by an affidavit of its attorney in which she explained the reasonable, necessary, and customary fees for legal services incurred in defense of Jordan's suit.

Jordan filed a response to CenterPoint's motion for attorney's fees. In the response, Jordan argued that he was entitled to an evidentiary hearing on the reasonableness and necessity of attorney's fees and that the evidentiary proceeding must be a jury trial because he paid a jury fee. Jordan's response was not supported by an attorney affidavit controverting CenterPoint's evidence, though the response stated that Jordan's counsel believed that the amounts CenterPoint requested were not reasonable or necessary.

The trial court signed a final judgment incorporating its earlier order granting CenterPoint's summary-judgment motion and awarding CenterPoint $124,236.44 in attorney's fees, $30,813.25 in costs and expenses, and conditional appellate attorney's fees.

Generally, the reasonableness of attorney's fees is a fact question. *See, e.g.*, *Bocquet v. Herring*, 972 S.W.2d 19, 21 (Tex. 1998). However, it is well-settled that "the affidavit of the attorney representing a claimant constitutes expert testimony that will support an award of attorney's fees in a summary judgment proceeding." *Haden v. David J. Sacks, P.C.*, 332 S.W.3d 503, 513 (Tex. App.—Houston [1st Dist.] 2009, pet. denied); *Tesoro Petroleum Corp. v. Coastal Refining & Mktg., Inc.*, 754 S.W.2d 764, 767 (Tex. App.—Houston [1st Dist.] 1988, writ denied). When the movant presents expert testimony in support of attorney's fees, the burden shifts

to the non-movant to raise a fact issue. *See, e.g.*, *In re Estate of Tyner*, 292 S.W.3d 179, 184-85 (Tex. App.—Tyler 2009, no pet.) (where appellant failed to provide controverting evidence in response to motion for attorney's fees, she "did not raise a fact question triggering the need for an evidentiary hearing before a fact finder"). In the absence of controverting evidence, the movant's affidavit will support summary judgment. *Tesoro*, 754 S.W.2d at 767.

Here, CenterPoint provided a detailed affidavit from its attorney. In the affidavit, CenterPoint's attorney swore under oath that she is a licensed attorney, she is familiar with the reasonable and necessary attorney's fees charged for cases such as this one, she has personal knowledge of the services rendered to CenterPoint in this matter, and that those services were reasonable, necessary, and customary. She specifically identified many of the *Arthur Anderson* factors[5] and attached detailed billing records to her affidavit. The affidavit and attached billing records conclusively support CenterPoint's claim for attorney's fees, costs, and expenses. *See Estate of Tyner*, 292 S.W.3d at 84-85; *see also Haden*, 332 S.W.3d at 513-14. Thus, the burden shifted to Jordan to raise a fact issue for trial.

To create a fact issue entitling a non-movant to an evidentiary hearing or trial on attorney's fees, "'the non-movant's attorney must file an affidavit contesting the reasonableness of the movant's attorney's fee affidavit.'" *Pacific Energy & Mining Co. v. Fidelity Exploration & Production Co.*, No. 01-17-00594-CV, 2018 WL 3543103, at *11 (Tex. App.—Houston [1st Dist.] July 24, 2018, no pet.) (mem. op.) (quoting *Owen Elec. Supply, Inc. v. Brite Day Constr., Inc.*, 821 S.W.2d 283, 288 (Tex. App.—Houston [1st Dist.] 1991, writ denied)). Though Jordan filed a response to CenterPoint's motion for attorney's fees, Jordan did not attach an

---

[5] *Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 818 (Tex. 1997).

affidavit or other evidence in an attempt to controvert CenterPoint's evidence of attorney's fees, costs, and expenses. He offered no expert evidence challenging the reasonableness and necessity of the attorney's fees CenterPoint requested. Jordan's sole evidence in response to CenterPoint's motion was his attorney's verification of the statements in the response, which averred:

> I am the attorney for the movant in the foregoing Motion for Continuance.[6]. I have read the motion. The statements contained in the motion are within my personal knowledge and are true and correct. Further, Counsel for Non-Movant does not believe the costs, expenses, and attorney fees as found in the Motion and/or attached as exhibits are reasonable nor reasonable and necessary.

Jordan's counsel's conclusory belief in a verification that CenterPoint's requested attorney's fees, costs, and expenses are not reasonable or necessary is alone insufficient to create a fact issue justifying a trial. Affidavits containing conclusory statements that are not supported by facts are not competent summary-judgment evidence. *See* Tex. R. Civ. P. 166a(f); *Pavlow v. Jensen*, No. 14-04-00750-CV, 2005 WL 3310015, at *6 (Tex. App.—Houston [14th Dist.] Dec. 8, 2005, no pet.) (mem. op.) (citing *Skelton v. Comm'n for Lawyer Discipline*, 56 S.W.3d 687, 692 (Tex. App.—Houston [14th Dist.] 2001, no pet.)). Jordan's counsel's verification was not competent summary judgment evidence because it contained no factual support for his "belief" that CenterPoint's attorney's fees were unreasonable or unnecessary. *See* Tex. R. Civ. P. 166a(f) (affidavit must be based on personal knowledge, set forth facts that would be admissible in evidence, and affirmatively show the affiant's competence to testify to the matters stated therein); *see also Pavlow*, 2005 WL 3310015, at *6 (citing cases where such conclusory affidavits failed to raise fact issue on reasonableness and necessity of attorney's fees). Jordan did not present any

---

[6] The pleading to which this verification was attached was not titled a motion for continuance, nor did it seek a continuance.

other evidence on attorney's fees. He did not complain that he lacked sufficient time to respond to CenterPoint's motion, nor did he request more time to investigate the reasonableness or necessity of CenterPoint's attorney's fees, or seek to depose CenterPoint's counsel.

We conclude that Jordan failed to raise a fact issue warranting a trial or evidentiary hearing on the amount of CenterPoint's requested attorney's fees, costs, and expenses. On appeal, he has not challenged the reasonableness or necessity of the trial court's award. Under these circumstances, we are compelled to affirm the award.

We overrule Jordan's challenge to the judgment awarding attorney's fees, costs, and expenses to CenterPoint.

## Conclusion

Having overruled Jordan's issues, we affirm the trial court's judgment.


/s/    Kevin Jewell
       Justice


Panel consists of Justices Jewell, Bourliot, and Zimmerer.

22