**Affirm in part; Reverse and Remand in part and Opinion Filed August 29, 2024**



In The
# Court of Appeals
## Fifth District of Texas at Dallas

### No. 05-22-01161-CV

**JUAN FLORES AND SAYRA FLORES, INDIVIDUALLY AND AS NEXT FRIENDS OF L.F., S.F., AND P.F., MINORS, Appellants**
**V.**
**ONCOR ELECTRIC DELIVERY COMPANY, LLC, AND DRU THOMSON, Appellees**

**On Appeal from the 192nd Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-18-06568**

## OPINION

Before Justices Garcia, Breedlove, and Kennedy
Opinion by Justice Breedlove

This is an appeal of the trial court's granting of summary judgment in a personal injury suit by appellant Juan Flores,[1] along with his wife Sayra both individually and as next friends of minors L.F., S.F., and P.F., against appellees

---

[1] For simplicity, we refer to the Flores parties as "the Floreses" but to Juan Flores individually as "Flores."

Oncor Electric Delivery Company LLC[2] and homeowner Dru Thomson. In four issues, the Floreses complain that the trial court erred in excluding their expert witness and granting summary judgment for all appellees. We conclude that the trial court did not err in excluding the Floreses' expert witness, granting summary judgment in favor of Oncor on the Floreses' claims against it, and in granting summary judgment on their claims against Thomson. We also conclude, however, that there are material fact issues that preclude summary judgment on Oncor's counterclaim for indemnity under Chapter 752 of the Texas Health and Safety Code. Accordingly, we affirm the trial court's judgment in part, reverse in part, and remand the case to the trial court.

## BACKGROUND

Thomson hired Flores to trim trees at her home. On May 22, 2016, Flores sustained serious injuries after being electrocuted when his ladder came into contact with a power line operated by Oncor. The Floreses sued Oncor, asserting claims for negligence, strict liability, negligent undertaking, gross negligence, and premises liability. The Floreses also sued Thomson, asserting claims for negligence, gross negligence, negligence per se, negligent undertaking and premises liability. The Floreses also pleaded that Thomson was liable to them under a respondeat superior

---

[2] The Floreses also sued Energy Future Holdings Corp. and Oncor Electric Delivery Administration Corp. but later nonsuited those claims.

theory. Oncor filed a counterclaim against the Floreses and a cross-claim against Thomson for indemnification under Chapter 752 of the Texas Health and Safety Code along with a general denial and affirmative defenses. Oncor then filed a no-evidence and traditional motion for summary judgment and, in a separate motion, moved to exclude the Floreses' expert, Stanley Buchanan. Thomson filed a no-evidence and traditional motion for summary judgment on December 19, 2019, as amended on October 1, 2021. The Floreses filed no-evidence motions for summary judgment on Oncor's and Thomson's affirmative defenses.[3]

On June 23, 2022, the trial court granted Oncor's motion to exclude Buchanan. On July 1, 2022, the trial court signed an order denying Oncor's no-evidence motion for summary judgment but also granting Oncor's traditional motion for summary judgment, which dismissed with prejudice all claims against Oncor. The trial court also ordered that Oncor recover from the Floreses its attorneys' fees and costs of court incurred in the defense of the claims pursuant to Chapter 752 of the Texas Health and Safety Code. On June 29, 2022, the trial court granted Thomson's no-evidence and traditional motions for summary judgment, dismissing all claims against Thomson with prejudice.

---

[3] The record indicates that the trial court denied the motion as to Thomson on June 29, 2022, but the record does not include a signed written order on the motion for summary judgment as to Oncor.

On July 13, 2022, Oncor filed a motion for severance and entry of final judgment. Oncor asked the court to enter a final judgment awarding it attorneys' fees and conditional appellate fees. To support its motion, Oncor attached the affidavit of its trial counsel, Lance Travis. The Floreses filed a response objecting to Oncor's request for attorneys' fees. The trial court overruled the Floreses' objections to Oncor's attorneys' fee evidence and signed its final judgment on July 22, 2022, dismissing with prejudice all claims against Oncor and Thomson, awarding Oncor attorneys' fees in the amount of $462,908.15 and awarding Oncor conditional appellate attorneys' fees of $80,000. The Floreses appealed.

## DISCUSSION

**Issue 1: Exclusion of the Floreses' Expert Witness**

We first address the Floreses' argument that the trial court erred in striking their expert, Stanley Buchanan, because Buchanan was qualified to offer his opinions and his opinions were reliable and relevant.

We review a trial court's decision to exclude an expert witness's testimony for an abuse of discretion. *E.I. du Pont de Nemours & Co. v. Robinson*, 923 S.W.2d 549, 558 (Tex. 1995). Expert testimony is admissible if (1) the witness is qualified to testify as an expert based on his "knowledge, skill, experience, training, or education," TEX. R. EVID. 702; and (2) the testimony is both relevant and based on a reliable foundation. *TXI Transp. Co. v. Hughes*, 306 S.W.3d 230, 234 (Tex. 2010).

A trial court does not abuse its discretion simply because we would have decided the matter differently. *Robinson*, 923 S.W.2d at 558. Instead, we must determine "whether the trial court acted without reference to any guiding rules or principles." *Id.* We must uphold the trial court's decision if there is any legitimate basis for it. *K-Mart Corp. v. Honeycutt*, 24 S.W.3d 357, 360 (Tex. 2000) (per curiam).

Texas Rule of Evidence 702 contains two hurdles that must be overcome before the expert testimony will be admissible. *N. Dallas Diagnostic Ctr. v. Dewberry*, 900 S.W.2d 90, 94 (Tex. App.—Dallas 1995, writ denied). "Proponents of expert testimony must establish (1) that scientific, technical, or other specialized knowledge will aid the trier of fact; and (2) the expert witness is qualified to testify on the subject." *Id.* at 94. Oncor challenged both grounds. Because the trial court did not specify on what grounds it granted Oncor's motion to exclude Buchanan's testimony, however, we may affirm the court's order if we determine the trial court did not abuse its discretion on either ground. *K-Mart Corp.*, 24 S.W.3d at 360.

The Floreses argue that Buchanan's opinions were not scientific but instead were based on his experience and technical knowledge.[4] When experts rely on experience or training to reach their opinions rather than on a particular

---

[4] Oncor analyzes Buchanan's opinions under both the *Robinson* factors and the analytical gap test, but the Floreses assert that only the analytical gap test applies because the opinions were not scientific. *See Whirlpool Corp. v. Camacho*, 298 S.W.3d 631, 638–39 (Tex. 2009). Because we conclude Buchanan's opinions were unsupported by the evidence in the record, and therefore, failed the analytical gap test, we need not address the question of whether the opinions were scientific. *See* TEX. R. APP. P. 47.1.

methodology, a reviewing court considers whether there is too great an analytical gap between the data and the opinion proffered for the opinion to be reliable. *Whirlpool Corp. v. Camacho*, 298 S.W.3d 631, 638–39 (Tex. 2009); *Moreno v. Ingram*, 454 S.W.3d 186, 193 (Tex. App.—Dallas 2014, no pet.). "Whether an analytical gap exists is largely determined by comparing the facts the expert relied on, the facts in the record, and the expert's ultimate opinion." *Gharda USA, Inc. v. Control Sols., Inc.*, 464 S.W.3d 338, 349 (Tex. 2015). Such a gap exists when the expert unreliably applies otherwise sound principles and methodologies, the expert's opinion is based on assumed facts that vary materially from the facts in the record, or the opinion is based on tests or data that do not support the conclusions reached. *Id.*

Buchanan opined in his affidavit:[5]

1. Oncor committed Code violations and failed to follow generally accepted and Best Practices that would have prevented Mr. Flores's electrocution. Oncor failed to place, inspect, bury, insulate, maintain, warn of, and remedy the poorly placed, improperly low, and uninsulated power lines. These acts and omissions were negligent and proximately caused Mr. Flores's electrocution.

2. The power lines that electrocuted Mr. Flores were **far too low** under the applicable National Electrical Safety Code (NESC) standards. The area immediately below the subject power line was a "driveway to residence garages" for purposes of Table 1, Sec. 232 of the 1948 NESC (Attachment 16) because it had gates and access consistent

---

[5] In his Certificate of Merit, Buchanan offered the additional opinion that Oncor was negligent in failing to trim the trees on Thomson's property. Because the Floreses appear to have abandoned this theory and do not raise it in their briefing, we do not address it here. *See* TEX. R. APP. P. 47.1

with such usage and because older residences such as Ms. Thomson's often did and still do feature either original or converted "driveway to residence garages" configured similarly to Ms. Thomson's. Since the voltage exceeded 750 volts, Table 1 required that the line clearance be at least 20 ft, but the lines were one (1) foot or more below that. The 1997 NESC shows the minimum clearance to be 18½ feet, but the Appendix to the 1997 NESC clarifies that at least another 18 inches must be added for expected line sag due to power drain in hot weather and for added weight during icy conditions, again requiring at least 20 feet in line height. Contrary to Oncor's position, in Table 1 the relevant area was **not** a "space or way accessible to **pedestrians only**," which specifies a height of 18 feet. The operative words "pedestrians only" specifically exclude, for example, an ATV or lawn mower operated by the owner. Therefore, on this private property **only** persons **other than** pedestrians, as that term is commonly understood could legally traverse the property. Pedestrians would be unlawfully trespassing. This shows that the applicable height was 20 feet or more and not 18 feet. A basic electrical safety principle is that more distance yields more safety. Oncor should have maintained the lines at a height of 20 feet or more, in compliance with the NESC and best electrical engineering practices.

3. Per the applicable NESC Code and possibly other applicable Codes, and in compliance with best electrical engineering practices, Oncor should have posted **warning signs** for **defective power lines** that would not and did not immediately shut down upon being contacted, resulting in much more serious injuries to Flores from the "step potential" than would have otherwise occurred (see https://www.osha.gov/laws-regs/regulations/standardnumber/1910/1910.269AppC).

4. The power lines should have been run **along or outside the property lines**, in compliance with best electrical engineering practices, and not through the middle of the property, in order to create more space between the lines and persons in the area. Again, more distance yields more safety.

5. Oncor should have insulated the power lines per NESC Rule 218, because of the proximity of trees to the lines, and in compliance with best electrical engineering practices.

6. If Oncor had done **any** of the above, Mr. Flores very likely would not have been electrocuted.

Buchanan's opinions regarding the height of the lines at issue derive from his interpretation of the National Electrical Safety Code (NESC), which he opined requires the lines above Thomson's backyard to be at least twenty feet high because it is a "driveway" rather than a path available to pedestrians only. Buchanan testified in his deposition that the basis for his interpretation is that Thomson's backyard is gated and she could potentially allow vehicles to pass through the gate, into her backyard, and under the power lines where Flores was electrocuted, should she choose to do so. He also testified in his deposition that her backyard "can be used" as a driveway, despite Thomson's testimony that it was not used as a driveway. He further based his interpretation on the fact that "when [he] was in the fifth grade, [he] had a house that looked almost exactly like [Thomson's]" that he can remember "[his] dad driving his pickup truck through there," and that it was common for houses such as Thomson's to have backyards converted into driveways.

Buchanan's interpretation is based on speculation and is not rooted in facts in the record. No evidence in the record supports the assumption that Thomson's backyard has ever been used as a driveway—in fact, the evidence in the record supports the opposite, that Thomson intended the backyard to be used only for

–8–

pedestrians. We conclude that Buchanan's opinion that the power line was illegal and unsafe because it did not comply with NESC height requirements suffers from a fatal analytical gap. *See Gharda USA, Inc.*, 464 S.W.3d at 349.

Buchanan's additional opinions regarding the absence of warning signs, the location of the power lines, and Oncor's failure to insulate the power lines suffer from the same analytical deficiencies. Buchanan's opinion that Oncor should have displayed warning signs relies on his assumption that the power lines were "faulty," but there is no evidence in the record to support that conclusion. Buchanan also fails to support his opinions by specific NESC Code provisions that are authoritative on these topics. The only section of the NESC Code that Buchanan cites to is Rule 218, but he fails to explain how that rule has anything to do with warning signs, the location of power lines, or the insulation of power lines. Rather, Rule 218 governs "vegetation management," which Buchanan referenced in his Certificate of Merit to support his opinion that Oncor was negligent in failing to trim the trees on Thomson's property; however, Buchanan later abandoned the theory that Oncor's failure to trim trees caused Flores' injuries.

For these reasons, we conclude the trial court did not abuse its discretion by excluding Buchanan's testimony. *See Robinson*, 923 S.W.2d at 558. We overrule the Floreses' first issue.

**Issue 2: Oncor's Traditional Motion for Summary Judgment**

The Floreses next argue that the trial court erred in granting Oncor's traditional motion for summary judgment on their negligence claims because there were genuine issues of material fact as to (1) whether Oncor owed a duty to Flores and proximately caused him harm; and (2) whether Oncor was entitled to a circular indemnity affirmative defense under Chapter 752 of the Texas Health and Safety Code.

We review a trial court's order granting summary judgment de novo; in doing so, we indulge every reasonable inference in favor of the nonmovant, resolve any doubts in favor of the nonmovant, and take as true all evidence favorable to the nonmovant. *See Cmty. Health Sys. Prof'l Servs. Corp. v. Hansen*, 525 S.W.3d 671, 680 (Tex. 2017). If the trial court grants summary judgment without specifying the grounds for the ruling, we must affirm the judgment if any of the grounds on which judgment is sought is meritorious. *Merriman v. XTO Energy, Inc.*, 407 S.W.3d 244, 248 (Tex. 2013).

Under the traditional summary judgment standard, the movant has the burden to show there is no genuine issue of material fact and it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Vince Poscente Int'l, Inc. v. Compass Bank*, 460 S.W.3d 211, 213–14 (Tex. App.—Dallas 2015, no pet.). Once the movant establishes its right to summary judgment as a matter of law, the burden shifts to the

nonmovant to present evidence raising a genuine issue of material fact, thereby precluding summary judgment. *Vince Poscente Int'l, Inc.*, 460 S.W.3d at 214. A genuine issue of material fact exists if the nonmovant produces more than a scintilla of probative evidence regarding the challenged element. *Ward v. Stanford*, 443 S.W.3d 334, 342 (Tex. App.—Dallas 2014, pet. denied). Where, as here, the trial court's orders granting summary judgment do not specify the grounds relied upon, we affirm if any of the summary judgment grounds presented to the trial court are meritorious. *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 216 (Tex. 2003). A defendant is entitled to traditional summary judgment if it conclusively disproves at least one essential element of the plaintiff's claim or conclusively establishes every element of an affirmative defense. *Ward*, 443 S.W.3d at 342.

## A.    The Floreses' Negligence Claims Against Oncor

In support of its traditional motion for summary judgment, Oncor challenged the evidence regarding the applicable standard of care. Oncor submitted the affidavit of its expert, B. Don Russell, Ph.D., P.E. Dr. Russell opined, among other things, that the power lines at issue were in compliance with the NESC Code and Texas law. In support of its motion, Oncor also incorporated by reference its motion to exclude Buchanan as an expert witness and argued the Floreses failed to timely and properly disclose any expert qualified to offer scientifically reliable expert testimony on any of their pleaded negligence theories.

Oncor asserts that because the conduct at issue involves specialized equipment and techniques that are unfamiliar to the ordinary person, the Floreses were required to present expert testimony on the standard of care to survive summary judgment. *See FFE Transp. Servs. Inc. v. Fulgham*, 154 S.W.3d 84, 91 (Tex. 2004) ("In determining whether expert testimony is necessary to establish negligence, Texas courts have considered whether the conduct at issue involves the use of specialized equipment and techniques unfamiliar to the ordinary person."); *see also Schwartz v. City of San Antonio*, No. 04-05-00132-CV, 2006 WL 285989, at *4 (Tex. App.—San Antonio Feb. 8, 2006, pet. denied) (mem. op.) ("Providing energy to the general public involves specialized equipment, and its techniques and concepts are unfamiliar to the ordinary person. Few people not involved in the energy-provider industry are familiar with electrical poles and appurtenances such as wires, transformers, insulators, cross-arms, and with the type of inspection, maintenance, and training they require."). Thus, Oncor argued it was entitled to judgment dismissing the Floreses' claims.

On appeal, the Floreses do not dispute that they were required to present expert testimony on the standard of care. The Floreses rely on Buchanan's testimony to raise fact issues on whether Oncor owed a duty to Flores and whether Oncor's breach of that duty caused Flores to suffer injuries as a result. As we have discussed, however, the trial court granted Oncor's motion to exclude Buchanan's testimony

on June 23, 2022, ordering that he "shall not be permitted to offer any expert opinions or other expert testimony in this suit." The trial court then granted Oncor's traditional motion for summary judgment on July 1, 2022. Because we hold that the trial court did not err in striking Buchanan's testimony, the Floreses cannot rely on Buchanan's testimony to raise a fact issue to defeat summary judgment as to their negligent activity claims.  Therefore, we conclude Oncor was entitled to traditional summary judgment on the Floreses' negligence claim because the Floreses failed to raise a material fact issue regarding whether Oncor breached its standard of care. [6] *See FFE Transp. Servs., Inc.*, 154 S.W.3d at 91. We overrule the Floreses' second issue as to their negligence claims.

## B.   The Floreses' Gross Negligence and Premises Liability Claims Against Oncor

The Floreses also argue that Oncor was not entitled to summary judgment on their gross negligence and premises liability claims because Oncor did not request relief or provide argument regarding those claims in its motions for summary judgment. As a result, the Floreses assert, the trial court erred in granting more relief

---

[6] The Floreses also argue that there are fact issues on Oncor's Chapter 752 circular indemnity affirmative defense that preclude summary judgment in favor of Oncor. We must affirm the judgment if any of the grounds on which Oncor sought judgment are meritorious because the trial court did not specify the grounds on which it granted the motion. *See Merriman*, 407 S.W.3d at 248.  Because we reach the conclusion that the trial court did not err in striking the testimony of Buchanan, thereby justifying summary judgment on that basis, we do not address Oncor's Chapter 752 affirmative defense; however, we address Oncor's counterclaim under Chapter 752 below.

than was requested by dismissing all of the Floreses' claims against Oncor with prejudice. We disagree.

First, while it is true that Oncor did not directly address gross negligence in its summary judgment motions, a finding of ordinary negligence is a prerequisite to a finding of gross negligence; therefore, by challenging the Floreses' negligence cause of action, Oncor necessarily challenged the Floreses' gross negligence cause of action. *See Sonic Sys. Int'l, Inc. v. Croix*, 278 S.W.3d 377, 394–95 (Tex. App.—Houston [14th Dist.] 2008, pet. denied). Therefore, we also overrule the Floreses' second issue as to their gross negligence claim.

Next, the Floreses are correct that Oncor requested summary judgment only on the Floreses' negligent activity claim, not on their premises liability claim against Oncor, and that, under some circumstances, this failure could result in a reversal of a trial court's grant of summary judgment on the unaddressed claim. Negligent activity and premises liability claims are separate and distinct theories of recovery that require proof of different, though similar, elements. *United Scaffolding, Inc. v. Levine*, 537 S.W.3d 463, 471 (Tex. 2017).

However, "the harmless error rule states that before reversing a judgment because of an error of law, the reviewing court must find that the error amounted to such a denial of the appellant's rights as was reasonably calculated to cause and probably did cause 'the rendition of an improper judgment' or that the error

'probably prevented the appellant from properly presenting the case [on appeal].'" *G & H Towing Co. v. Magee*, 347 S.W.3d 293, 297 (Tex. 2011) (per curiam) (quoting TEX. R. APP. P. 44.1(a)). The rule applies to all errors. *Id.* Although the trial court errs in granting a summary judgment on a cause of action not expressly presented by written motion, any error in granting summary judgment on the unaddressed claim is harmless when the omitted cause of action is precluded as a matter of law by other grounds raised. *Id.* at 297–98. This occurs when either (1) the movant has conclusively proved or disproved a matter (usually correspondent to a claim's element or to an affirmative defense) that would also preclude the unaddressed claim as a matter of law, or (2) the unaddressed claim is derivative of the addressed claim, and the movant proved its entitlement to summary judgment on that addressed claim. *See id.* at 297.

In support of their negligent activity claim against Oncor, the Floreses pleaded that Oncor breached its duties by:

> [F]ailing to install and maintain the power lines in compliance with applicable Codes and Best Practices, in ways including but not limited to the following:
>
> a. Failing to install and maintain the power lines at the proper height;
> b. Failing to adequately warn of the overhead power lines;
> c. Failing to insulate the overhead power lines;
> d. Failing to bury the overhead power lines;
> e. Failing to place the power lines at safe locations around the property boundaries instead of through the yard;

f. Failing to properly maintain the vegetation and trees on the subject premises;

g. Failing to properly train their employees and contractors in safety procedures;

h. Failing to properly supervise all employees and contractors; and

i. Failing to make the condition reasonably safe and such other and further acts of negligence as may be shown in the trial of this cause.

The Floreses' premises liability and negligent activity claims against Oncor rely on, verbatim, the same alleged failures, and the same breach of the same duty of care. Thus, as discussed with respect to their negligent activity claim, the Floreses were required to submit expert testimony to create a fact issue on the applicable standard of care for their premises liability claim. Because we hold the trial court did not err in striking Buchanan's testimony, the premises liability claim is subject to the same fatal defect. Therefore, we conclude any error in granting summary judgment on the basis that the claim was not expressly addressed in the dispositive motion was harmless.[7] *See G&H Towing Co.*, 347 S.W.3d at 297. We overrule the Floreses' second issue as to their premises liability claim.

---

[7] Because it is not necessary to the resolution of the Floreses' issue, we express no opinion as to whether, as an easement holder, Oncor is properly subject to a premises liability claim under this particular set of facts. *See Oncor Elec. Delivery Co., LLC v. Murillo*, 449 S.W.3d 583, 590 (Tex. App.—Houston [1st Dist.] 2014, pet. denied) (en banc) (conducting a fact-specific analysis to determine whether Oncor, as an easement holder, was subject to a premises liability claim in that case).

**Issue 3: Thomson's No-Evidence and Traditional Motion for Summary Judgment**

We next address the trial court's rulings on the Floreses' claims against Thomson. The trial court granted Thomson's traditional and no-evidence motions for summary judgment on the Floreses' claims for negligent activity and premises liability.

In support of their negligent activity claim, the Floreses alleged Thomson owned and/or controlled the property where Flores was injured and knew she had a duty to maintain the area in a safe condition. The Floreses also alleged Thomson was negligent per se because she had a duty under Chapter 752 of the Texas Health and Safety Code to notify Oncor that Flores would be working near the power lines and negotiate a satisfactory mutual arrangement to provide for a safe workplace.

In support of their premises liability claim, the Floreses alleged that live electrical wires ran across Thomson's property where she instructed Flores to work, which constituted a condition on the premises that posed an unreasonable risk of harm to Flores.

**A.    Nature of the Floreses' Negligence Claim Against Thomson**

A person injured on another's property may have either a premises liability claim or a negligence claim against the property owner. *Occidental Chem. Corp. v. Jenkins*, 478 S.W.3d 640, 644 (Tex. 2016). "Negligence and premises liability claims . . . are separate and distinct theories of recovery, requiring plaintiffs to prove

different, albeit similar, elements to secure judgment in their favor." *United Scaffolding, Inc.*, 537 S.W.3d at 471.

Negligent activity and premises liability claims "involve closely related but distinct duty analyses." *Id.* "Premises liability is a special form of negligence in which the duty owed to the plaintiff depends upon the plaintiff's status on the premises at the time of the incident." *Wyckoff v. George C. Fuller Contracting Co.*, 357 S.W.3d 157, 163–64 (Tex. App.—Dallas 2011, no pet.) (citing *Scott & White Mem'l Hosp. v. Fair*, 310 S.W.3d 411, 412 (Tex. 2010)).

The line between negligent activity and premises liability is sometimes unclear, since almost every artificial condition can be said to have been created by an activity. *See Del Lago Partners, Inc. v. Smith*, 307 S.W.3d 762, 776 (Tex. 2010). The policy undergirding the distinction between the two theories is that negligent activity encompasses a malfeasance theory based on affirmative, contemporaneous conduct that caused the injury, whereas premises liability encompasses a nonfeasance theory based on the owner's failure to take measures to make the property safe. *See id.* Negligent activity concerns "simply doing or failing to do what a person of ordinary prudence in the same or similar circumstances would have not done or done" while premises liability concerns "the failure to use ordinary care to reduce or eliminate an unreasonable risk of harm created by a premises condition which the owner or occupier [of land] knows about or in the exercise of ordinary

–18–

care should know about." *Timberwalk Apartments, Partners, Inc. v. Cain*, 972 S.W.2d 749, 753 (Tex. 1998) (internal quotation omitted). To determine on which side of the line a claim falls, Texas courts look to whether the activity that caused the condition was ongoing or had ceased when the injury occurred. *See Levine*, 537 S.W.3d at 472–73.

The Floreses' negligent activity and premises liability claims rely on the same factual allegation: that Thomson failed to maintain her property in a safe condition. In support of their premises liability claim, the Floreses alleged Thomson:

Breached her duty of ordinary care by:

a. Failing to adequately warn Plaintiff Flores of the dangerous condition;
b. Failing to make the condition reasonably safe;
c. Advising Juan Flores that she had called Oncor to turn off the power to the lines when she had not;
d. If she had called Oncor to turn off the power, failing to ensure that Oncor turned off the power before allowing Flores to work in the yard.

The Floreses did not allege that Flores was injured by any negligent activity on Thomson's part. *See Timberwalk Apartments*, 972 S.W.2d at 753 (stating that claimant did not allege she was injured "by or as a contemporaneous result of any activity of defendants" as required to state a negligent activity claim). Therefore, the Floreses' claim does not arise out of any negligent activity by Thomson but, instead, is a premises liability claim sounding in nonfeasance. *See Castro v. H.E.B. Grocery Co., L.P.*, No. 14-18-00277-CV, 2019 WL 2518481, at *4 (Tex. App.—Houston [14th Dist.] June 18, 2019, no pet.) (mem. op.) ("Here, the Castros' negligence claim

arises from an allegation of nonfeasance rather than any claim of malfeasance on HEB's part.").

Moreover, the Floreses do not cite and we cannot find any evidence in the summary judgment record showing that any contemporaneous ongoing activity of Thomson on the premises caused Flores's injuries. The evidence established that although Thomson had been in the backyard earlier in the day, she was not at the worksite immediately prior to or at the time of Flores's injuries. Indeed, the record indicates that Thomson learned of the accident only after Flores's colleagues retrieved Thomson from inside her home to enlist her assistance in performing emergency lifesaving measures on Flores. The condition of the premises did not result from any contemporaneous, ongoing activity, much less any ongoing activity conducted by Thomson. Because the Floreses' negligence claim does not sound in negligent activity, we conclude that it fails as a matter of law. *See Keetch v. Kroger Co.*, 845 S.W.2d 262, 264 (Tex. 1992) ("Recovery on a negligent activity theory requires that the person have been injured by or as a contemporaneous result of the activity itself rather than by a condition created by the activity."). The trial court

properly granted summary judgment in Thomson's favor on the Floreses' negligent activity claim.

**B.      The Floreses' Premises Liability Claim Against Thomson**

We next consider whether the trial court erred in granting the no-evidence summary judgment as to the Floreses' premises liability claim against Thomson.

The Floreses allege Flores was an invitee of Thomson.  An invitee is one who enters the property of another with the owner's knowledge and for the mutual benefit of both. *Austin v. Kroger Tex. L.P.*, 465 S.W.3d 193, 202 (Tex. 2015). Therefore, under the premises defect theory of premises liability there are two subcategories: (1) defects existing on the premises when the independent contractor/invitee entered; and (2) defects the independent contractor created by its work activity. *Coastal Marine Serv. of Tex., Inc. v. Lawrence*, 988 S.W.2d 223, 225 (Tex. 1999) (per curiam).

The Floreses' premises liability theory falls in the first subcategory of defects: that a defect existed on the premises when Flores entered.  Specifically, they allege that the live electrical wire that ran across Thomson's premises constituted a "defect" giving rise to the premises liability claim.

Under the first subcategory, the premises owner has a duty to inspect the premises and warn the independent contractor/invitee of dangerous conditions that are not open and obvious and that the owner knows or should have known exist. *Id.*

Premises defects of this type are ones "in which the danger did not arise through the work activity of the subcontractor/invitee." *Id.* (quoting *Shell Chem. Co. v. Lamb*, 493 S.W.2d 742, 746 (Tex. 1973)). "Only concealed hazards—dangerous in their own right and independent of action by another—that are in existence when the independent contractor enters the premises fall into this first subcategory of premises defects." *Id.*

Thomson filed both a no-evidence and a traditional motion for summary judgment on the Floreses' premises liability claim. In the no-evidence motion, Thomson argued the following: (1) there is no evidence Flores lacked actual knowledge of any alleged danger posed by the power lines; (2) there is no evidence Thomson breached her duty of care by failing to warn Flores of the dangerous condition; and (3) there is no evidence Thomson failed to make the condition reasonably safe.

"Whether a danger is open and obvious is a question of law determined under an objective test." *Los Compadres Pescadores LLC v. Valdez*, 622 S.W.3d 771, 788 (Tex. 2021). A danger is open and obvious if a reasonably prudent invitee would have had knowledge and appreciation of the nature and extent of the danger under similar circumstances. *See id.* "The question is whether the danger is so open and obvious that as a matter of law the plaintiff will be charged with knowledge and appreciation thereof." *Id.* (internal quotation omitted). "Under the objective

standard, the question is not what a plaintiff subjectively or actually knew but what a reasonably prudent person would have known under similar circumstances." *Id.* Under this test, a court looks to the totality of the circumstances. *See id.* at 788–89.

In *Los Compadres Pescadores*, the supreme court applied a totality of circumstances approach to determine whether power lines that existed in the area where work was being performed presented an "open and obvious" danger. *See id.* While the presence of the power lines was open and obvious, determining whether the active state of the lines was open and obvious required a consideration of all surrounding circumstances. *See id.* In that case, the injured workers testified that their employer told them he contacted the electric company to have the power to the lines cut off, and also testified that the lines were always de-energized when they worked for the employer. *See id*. at 789. The court recognized that "there is inherent danger in working around live wires, and those engaged to perform such work should be expected to realize the danger of accidental contact with the charged line[.]" *See id.* (internal quotation omitted). However, given the specific circumstances surrounding what was told to the workers in that case, the fact that the lines were energized and thus dangerous was not open and obvious as a matter of law. *See id.* at 789–90.

Unlike in *Los Compadres Pescadores*, the summary judgment record in this case is devoid of any evidence that Flores believed the power lines were deactivated.

To the contrary, Flores testified that Thomson told him she called Oncor, but instead of coming out as she asked, Flores testified that Thomson told him Oncor never came and "never paid attention to her."

Rather than support the Floreses' contention that the active state of the power lines was unknown, Flores's testimony evidenced he believed Oncor ignored Thomson's request and had not deactivated the lines. Unlike in *Los Compadres Pescadores*, considering the totality of the circumstances, a reasonably prudent person would have knowledge that the lines were energized, and therefore, their dangerous state was open and obvious. While we do not suggest this is always the case, we conclude that under these particular circumstances, the trial court did not err in ruling that the Floreses failed to satisfy their burden to offer a scintilla of evidence showing that a reasonable prudent person in Flores's position would not have known the lines were energized.

We overrule the Floreses' third issue.[8]

---

[8]Given our disposition on the trial court's ruling on Thomson's no-evidence motion for summary judgment, we do not address the order granting Thomson's traditional motion for summary judgment. *See Regency Dev. & Constr. Servs., LLC v. Carrington*, No. 05-18-00564-CV, 2019 WL 4051831, at *4 (Tex. App.—Dallas Aug. 28, 2019, pet. denied) (mem. op.) (If we affirm trial court's disposition of the claims on a no-evidence motion, we need not consider the traditional motion).

**Issue 4: The Floreses' Liability to Oncor for Indemnification**

In their final issue, the Floreses argue the trial court erred in granting Oncor's motion for summary judgment on its counterclaim for indemnity against the Floreses under Chapter 752 and awarding Oncor its attorneys' fees and conditional attorneys' fees on that claim. [9] Although the Floreses challenge only the award of attorneys' fees under Chapter 752, the award necessarily rests on the trial court's determination as a matter of law that Flores was the "responsible party" under Chapter 752. Thus, we first consider whether Oncor established its right to summary judgment as a matter of law on its indemnity counterclaim against the Floreses. To do so, Oncor bore the burden to conclusively prove all elements of its cause of action as a matter of law. TEX. R. CIV. P. 166a(c); *Kyle v. Countrywide Home Loans, Inc.*, 232 S.W.3d 355, 358 (Tex. App.—Dallas 2007, pet. denied) (citing *Nationwide Prop. & Cas. Ins. Co. v. McFarland*, 887 S.W.2d 487, 490 (Tex. App.—Dallas 1994, writ denied)).

**A.      Overview of Chapter 752**

The Texas Legislature enacted Texas Health and Safety Code Chapter 752 to ensure the safety of persons engaged in activities near high voltage lines. *See Ringo*

---

[9] Oncor also filed a counterclaim against Thomson for indemnification but nonsuited it without prejudice on July 6, 2022, after the trial court signed the orders granting Oncor's and Thomson's motions for summary judgment. Therefore, there is no claim against Thomson for indemnity.

*v. Gulf States Utils. Co.*, 569 S.W.2d 31, 35 (Tex. App.—Beaumont 1978, writ ref'd n.r.e.). As relevant here, Chapter 752 contains prohibitions and requirements for certain persons conducting activity near high voltage overhead lines.[10]

Section 752.008 provides that "if a violation of [Chapter 752] results in physical or electrical contact with a high voltage overhead line, the person, firm, corporation, or association that committed the violation is liable to the owner or operator of the line for all damages to the facilities and for all liability that the owner or operator incurs as a result of the contact." TEX. HEALTH & SAFETY CODE ANN. § 752.008.[11] Oncor argues that because Flores violated Chapter 752, he is liable to Oncor under section 752.008, citing cases from our sister courts. *See, e.g.*, *Trail v. Friedrich*, 77 S.W.3d 508, 513–14 (Tex. App.—Houston [1st Dist.] 2002, pet. denied); *Chavez v. City of San Antonio ex rel. City Pub. Serv. Bd. of San Antonio*, 21 S.W.3d 435, 437 (Tex. App.—San Antonio 2000, pet. denied).

Section 752.003 sets forth certain notice and safety requirements that must be met before certain functions or activities may be performed within certain prescribed distances of a high voltage overhead line. TEX. HEALTH & SAFETY CODE ANN. § 752.003. Specifically, subsection (a) states: "A person, firm, corporation, or

---

[10] Section 752.001 defines "high voltage lines." TEX. HEALTH & SAFETY CODE ANN. § 752.001. The parties do not dispute that the line in question was a high voltage overhead line for purposes of Chapter 752.

[11] Chapter 752 provides criminal liability for violations of the Chapter, but those provisions are not at issue here.

association responsible for temporary work or a temporary work activity or function closer to a high voltage overhead line than the distances prescribed by this chapter must notify the operator of the line at least 48 hours before the work begins." *Id.* § 752.003(a). Subsection (b) then prohibits a person, firm, corporation, or association from beginning the work, activity, or function until the person, firm, corporation, or association responsible for the work, activity, or function and the owner or operator, or both, have negotiated certain mutual safety arrangements. *See id.* § 752.003(b).[12]

The parties agree that section 752.004(a)(2) provides the prescribed distances operative in this case.[13] Section 752.004(a)(2) states:

(a)     Unless a person, firm, corporation, or association effectively guards against danger by contact with the line as prescribed by Section 752.003, the person, firm, corporation, or association, either individually or through an agent or employee, may not perform a function or activity on land, a building, a highway, or other premises if at any time it is possible that the person performing the function or activity may:

. . .

(2)     bring any part of a tool, equipment, machine, or material within six feet of a high voltage overhead line while performing the function or activity.

---

[12] Subsection (c) requires the responsible party to pay the operator the actual expenses the operator incurs in executing the parties' agreement, and the operator is not required to provide clearance until such payment is made. *See id.* § 752.003(c).

[13] Section 752.005 also provides prescribed distances for certain activities, none of which are relevant here. *See id.* § 752.005.

*Id.* § 752.004(a)(2).

No court has established the elements necessary to raise a Chapter 752 counterclaim. *See Oncor Elec. Delivery Co. LLC v. Quintanilla*, No. 05-19-01331-CV, 2022 WL 9809712, at *7 (Tex. App.—Dallas Oct. 17, 2022, pet. denied) (mem. op.) (following elements presented by Oncor in an evidentiary sufficiency analysis without adopting the elements). However, according to the express language of section 752.008, to be entitled to indemnity from Flores, Oncor was required to establish, among other elements that are not at issue in this appeal, that as a matter of law Flores committed a violation of Chapter 752.[14]

In its motion, Oncor argued that Flores violated Chapter 752 in two ways: (1) in violation of section 752.003, by failing to give Oncor forty-eight hours' notice and by failing to negotiate a satisfactory mutual arrangement with Oncor before beginning the work; and (2) in violation of section 752.004(a)(2), by bringing his ladder within six feet of Oncor's high voltage overhead power line. To establish both violations, Oncor argued that Flores was "[a] person . . . responsible" for the work within the meaning of section 752.003(a).

---

[14] That is not to say that Oncor must show that *only* Flores committed a violation of Chapter 752 in order to extinguish the Floreses' claims against it. The possibility of multiple violators is relevant to the determination of who is responsible for indemnifying Oncor, but it is not relevant to whether Oncor can prevail on its affirmative defense. *See Jordan*, 2019 WL 5565978, at *6 (holding that a person responsible is a person who has *some* degree of control over the details of the work being performed) (first citing *Trail*, 77 S.W.3d at 513; then citing *Chavez*, 21 S.W.3d at 439). Therefore, we do not need to decide today whether the statute allows for multiple parties to be persons responsible under Chapter 752.

On appeal, the Floreses argue that fact issues exist as to (1) whether Flores was the "person . . . responsible" for notification purposes under Chapter 752; and (2) whether Flores violated Chapter 752.[15] Because the Floreses do not dispute the Chapter 752 indemnity elements provided by Oncor, we evaluate the specific issues raised by the Floreses without adopting Oncor's provided elements. *See* TEX. R. APP. P. 47.1; *Oncor Elec. Delivery Co. LLC*, 2022 WL 9809712, at *7.

**B.    A Person Responsible for the Work Under Section 752.003(a)**

Chapter 752 does not define "person, firm, corporation, or association responsible" for the work, activity, or function. *See* TEX. HEALTH & SAFETY CODE ANN. §§ 752.001, 752.003. The parties dispute how to interpret this language, and neither this Court nor the Supreme Court of Texas has addressed the interpretation of a person "responsible for temporary work or a temporary activity or function" under section 752.003. Other courts have construed these terms to mean one who

---

[15] Because we hold that Oncor did not satisfy its burden as to the issue of the "responsible person," we need not reach the issue of whether there is a fact issue regarding whether Chapter 752 was violated. *See* TEX. R. APP. P. 47.1.

(1) has control over the worksite,[16] (2) has control over the work itself,[17] or (3) a combination of both factors.

In *City of Austin v. Membrano Lopez*, Jaime Membreno was electrocuted while repairing stucco at a nightclub owned by Saljar, Inc. 632 S.W.3d 200, 204–05 (Tex. App.—Austin 2021, pet. denied). At the time, he was employed by Luis Romero. Membreno's heir sued Saljar, Romero, and the City of Austin, who owned the power line that electrocuted Membreno. *Id.* at 206. The case was tried to a jury, who found in favor of the heir and divided up responsibility among Membreno (10%), Saljar (30%), Romero (34%), and the City (26%). *Id.* at 208. The trial court signed a final judgment that (1) awarded the heir over $2.4 million in damages against the City, plus costs and pre- and post-judgment interest and (2) ordered Saljar and Romero to indemnify the City for its portion of the same amount based on the City's cross-claims against them for Chapter 752 violations. *Id.*

---

[16] *See Hullum v. Skyhook Corp.*, 753 F.2d 1334, 1338 (5th Cir. 1985); *AEP Tex. N. Co. v. SPA Pipe, Inc.*, No. 03–06–00122–CV, 2008 WL 5210919, at *6 n.10 (Tex. App.—Austin Dec. 12, 2008, pet. dism'd) (mem. op., per curiam) (questioning "work site" interpretation but considering and applying *Hullum* factors); *Chavez*, 21 S.W.3d at 439; *McCaughtry v. Barwood Homes Ass'n*, 981 S.W.2d 325, 335 (Tex. App.—Houston [14th Dist.] 1998, pet. denied).

[17] *See Espinoza v. Hicks*, 984 S.W.2d 274, 276 (Tex. App.—El Paso 1998, no pet.); *Trail*, 77 S.W.3d at 512; *Wood v. Phonoscope, Ltd.*, No. 01-00-01054-CV, 2004 WL 1172900, at *10 (Tex. App.—Houston [1st Dist.] May 27, 2004) (mem. op.), *op. sup. on denial of reh'g*, 2004 WL 2476570 (Tex. App.—Houston [1st Dist.] Nov. 4, 2004, no pet.) (mem. op.); *Jordan v. Centerpoint Energy Hous. Elec., LLC*, No. 14-18-00663-CV, 2019 WL 5565978, at *6 (Tex. App.—Houston [14th Dist.] Oct. 29, 2019, pet. denied) (mem. op.).

On appeal, Saljar argued that one of the jury questions was fatally defective because it incorrectly stated the applicable legal standard for determining whether Saljar was the person or entity "responsible for temporary work" closer than six feet to the City's power line. *Id.* at 227. Saljar argued that instead of asking whether Saljar had "exercise[d] some degree of control of the work site within six feet of the high voltage overhead line that caused or contributed to the occurrence in question," the charge should have asked who exercised control over the details of the contractor's work. *Id.* This argument essentially called upon the Austin Court of Appeals to decide whether the "control of the worksite" approach or the "control of the work" approach was the correct legal standard. Saljar argued that there was a split in authority among the courts of appeals and that the Austin Court of Appeals should reject the "control of the worksite" approach in favor of the "control of the work" approach. *Id.* at 228.

> In response, the Austin court noted:
>
> We disagree that the use of different phrasing in these cases necessarily indicates a split in authority; instead, there is a central theme that runs through them. Courts that have considered the issue, including in the cases relied on by Saljar, have determined that the key concern in identifying the "person responsible" is identifying the person or entity responsible "for having workers near a power line."

*Id.* (internal citations omitted). The Austin court then held that "determining who is the 'party responsible' is a fact-specific inquiry that turns on who determines the location of the work and its proximity to a power line, an inquiry that in some cases

–31–

will be informed by who controls the details of the work" but could also include a property owner who does not control the "details of the work." *Id.* at 229. Ultimately, the court held that "the trial court correctly considered the intent of the statute to place liability for losses resulting from noncompliance with the notification and safety provisions on the person responsible for having workers near a power line." *Id.* at 230 (internal quotations omitted).

We agree with the Austin court's interpretation of the "person . . . responsible" for the work, activity, or function, as that phrase is used in section 752.003. Therefore, we hold that whether a party is a "person, firm, corporation, or association responsible for temporary work or a temporary activity or function" under Chapter 752 is a fact-intensive inquiry wherein factfinders should consider relevant evidence regarding both control and causation to determine whether the party is a "person . . . responsible" under Chapter 752. *See id.* The inquiry should consider, at a minimum, both evidence regarding who controls the worksite and evidence regarding who controls the details of the work. *See id.* at 229.

After reviewing the summary judgment evidence in this case, we conclude there is conflicting evidence regarding whether Thomson told Flores she either would call Oncor or had called Oncor before he began his work. We therefore conclude there is a material fact question that precludes summary judgment on Oncor's Chapter 752 claim. We decline to adopt an interpretation of Chapter 752

that concludes a property owner can never be the "person . . . responsible" as a matter of law. Depending on the facts of a particular case, the person who owns the property or controls the work or worksite may be the "person . . . responsible." It would be inconsistent with the purpose of the statute to shield from liability a property owner who assumes control by telling the independent contractor she will comply with the statute's notice requirement and then fails to do so. Under these facts, Oncor did not establish as a matter of law that Flores was the "person . . . responsible" under the statute.

Because there is a fact question regarding whether Flores is the "person . . . responsible" under Chapter 752, the trial court erred in granting summary judgment for Oncor on its indemnity counterclaim against Flores. We sustain the Floreses' fourth issue and reverse the trial court's judgment as to Oncor's indemnification award, including attorneys' fees. *See id.*

## CONCLUSION

We reverse the trial court's grant of summary judgment as to Oncor's counterclaim for indemnification, including the trial court's award of attorney's fees. We remand to the trial court for further proceedings on those issues. We affirm the judgment in all other respects.

221161f.p05

/Maricela Breedlove/
MARICELA BREEDLOVE
JUSTICE



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

JUAN FLORES AND SAYRA FLORES, INDIVIDUALLY AND AS NEXT FRIENDS OF L.F., S.F. AND P.F., MINORS, Appellants

No. 05-22-01161-CV     V.

ONCOR ELECTRIC DELIVERY COMPANY, LLC, ENERGY FUTURE HOLDINGS CORP., ONCOR ELECTRIC DELIVERY ADMINISTRATION CORP., AND DRU THOMSON, Appellees

On Appeal from the 192nd Judicial District Court, Dallas County, Texas Trial Court Cause No. DC-18-06568. Opinion delivered by Justice Breedlove. Justices Garcia and Kennedy participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED** in part and **REVERSED** in part. We **REVERSE** that portion of the trial court's judgment granting summary judgment as to Oncor's counterclaim for indemnification, including the trial court's award of attorney's fees. In all other respects, the trial court's judgment is **AFFIRMED**. We **REMAND** this cause to the trial court for further proceedings consistent with this opinion.

It is **ORDERED** that each party bear its own costs of this appeal.

Judgment entered this 29th day of August, 2024.